# DECISIONS

# SUPREME COURT OF FLORIDA,

AT A

## SPECIAL TERM,

### CONVENED DECEMBER 12, 1876.

———————

THE STATE OF FLORIDA, EX REL. GEORGE F. DREW, VS. SAMUEL B. McLIN, SECRETARY OF STATE, CLAYTON A. COWGILL, COMPTROLLER, AND WILLIAM ARCHER COOKE, ATTORNEY-GENERAL, CONSTITUTING THE BOARD OF STATE CANVASSERS.

16   17
f56   191
56   192
56   624

1. Whether a vote cast at an election was legally cast, or whether an election held on the day appointed of which due return is made to the Board of State Canvassers was a legal election, are judicial questions which the Board of State Canvassers of elections cannot determine. The general power and duty of this Board is to ascertain and declare who received the majority of votes cast. This is a ministerial duty, and its exercise may be controlled by mandamus.

2. The words "true vote," in the statute governing the Board, mean the actual vote cast as distinct from the strictly legal vote. Where a return is so irregular, false, or fraudulent that the Board is unable to determine the actual vote cast, the entire return, under the statute, should be rejected. While this power to determine the falsity or irregularity is something more than simply counting or computing, still such power necessarily appertains to the discharge of every ministerial duty of this character.

3. Where acts admitted to be done by the answer of respondents in a proceeding by mandamus disclose erroneous action and a failure to discharge a ministerial duty imposed by law, and a consequent violation of right, this court has power to order a Board of State Canvassers to reassemble and discharge their duty.

4. There is strictly no return to a peremptory writ of mandamus. It is to be obeyed. A certificate showing in general terms a performance of the several specific acts commanded to be done, is the proper response

2

to such writs. All other matter is surplusage and should be stricken out.

5. Under the statute, the proper and only place for the filing of the original certificate of a canvass by the Board of State Canvassers of the votes cast at a general election for Governor in this State, is the office of the Secretary of State. Where such an original certificate is filed in this court as a response to a peremptory writ commanding a canvass, this court should direct its return to its only proper legal place of deposit. While it is the duty of this court to compel the Board of State Canvassers to perform their duties, still the canvass made by them under our order is their canvass. This court is not a Board of State Canvassers.

6. Where, in a proceeding by mandamus, the question of the jurisdiction of the court has been heard and determined, a protest against the jurisdiction interpolated in the certificate of obedience to the peremptory writ should be stricken out. Having determined that we have jurisdiction, it is our duty to enforce our order, and that question cannot be thus again raised.

7. Where a canvass for votes cast for persons at an election for the office of Governor of this State is commanded by a peremptory writ, a response showing a canvass of votes cast for other officers is surplusage, which the court of its own motion should strike out.

## Statement of the Case.

The relator, on the 13th day of December, 1876, filed a petition praying that a writ of mandamus should issue against S. B. McLin, Secretary of State, C. A. Cowgill, Comptroller, and W. A. Cocke, Attorney-General, composing the Board of State Canvassers, and entered a motion for an order that an alternative writ of mandamus issue in accordance with the prayer of the petition, and an order was made by the Court directing that an alternative writ issue accordingly, returnable December 14th, 1876, at eleven o'clock, a. m., and thereupon the following writ was issued:

THE STATE OF FLORIDA TO SAMUEL B. McLIN, Secretary of State, WILLIAM A. COCKE, Attorney-General, and CLAYTON A. COWGILL, Comptroller, members of the Board of Canvassers of Florida, and to every of them—GREETING:

WHEREAS, It has been suggested to us by the petition of

George F. Drew that a general election was held on the 7th day of November, A. D. 1876, in the several counties of this State, for the election of Governor of the State, and Lieutenant-Governor thereof, and for members of the Assembly for all the counties of the State and for Senators from the several odd numbered Senatorial districts of the State, said election being held in pursuance of law and of proclamation, duly made by the Secretary of State; that at said election, the petitioner, George F. Drew, who was and is eligible and qualified to hold the office of Governor of said State, was a candidate to be voted for by the voters of said State to fill said office, and that besides himself, one Marcellus L. Stearns was a candidate for said office, and that other than himself and said Stearns there was no candidate or candidates voted for to fill the same; that by the returns of the said election received at the office of the Secretary of State, and now on file in said office, the whole number of votes cast at said election for said George F. Drew were twenty-four thousand six hundred and thirteen (24,613) votes, and the whole number of votes cast for said Stearns were twenty-four thousand one hundred and sixteen (24,116) votes; that in pursuance of law, Samuel B. McLin, Secretary of State, William Archer Cocke, Attorney-General, and C. A. Cowgill, Comptroller, constituting the Board of State Canvassers of Elections, assembled, convened and organized as such Board, at the office of the Secretary of State, on the 27th day of November, A. D. 1876, to canvass the votes of said State given at the said election for Electors of President and Vice-President of the United States, and for Governor and Lieutenant-Governor of Florida, and for members of the Congress of the United States, and members of the Legislature of Florida; that on their said organization of said Board they proceeded to canvass and count the vote cast at the said election for Electors of President and Vice-President; that in the making of such canvass and count of the electoral vote, as the said George F. Drew is informed and believes and avers, the said Board undertook to exercise, and did exercise and usurp judicial functions and powers in this: that they went behind the face of the election returns from divers counties of the State, and did, upon certain affidavits, or pretended affidavits, and upon other pretended evidence, discard the vote

of the county of Manatee, and did refuse to canvass and count and enumerate the votes of the counties of Jackson, Hamilton and Monroe, as shown by the returns of and from said counties of said election, and that they determined to pursue, and have pursued the same course in the canvass and count which they pretend to have made of the votes cast at said election for the office of Governor and Lieutenant-Governor and members of the Legislature, and have refused to count the entire vote of the county of Manatee as shown by the returns from said county to have been cast in said county for said officers ; and have refused to canvass and count the votes of the counties of Jackson, Hamilton and Monroe, as shown by the returns from said counties to have been cast at said election for said officers ; and that said Board, as said George F. Drew is advised, have and can exercise no judicial functions or powers under the Constitution of this State, or at most only *quasi* judicial powers, in the discharge of their duties as a Board of State Canvassers of Elections, and that it is and was their duty to examine the papers received by the Secretary of State, and purporting to be election returns of said election, and after ascertaining that they appear to be genuine, to declare the result of said election as shown by said returns ; that the said Board of State Canvassers, or a majority of them, pretend that they have already concluded, completed and performed, the canvass of the said votes cast at the said election for Govenor and Lieutenant-Governor and members of the Legislature, which the said George F. Drew denies, and avers that the contrary of is true : that they have not, as the law requires, canvassed and counted and enumerated the votes cast at said election in the counties of Jackson, Manatee, Hamilton and Monroe, that their said pretended canvass of the returns from said counties, if any such has been made, which he does not admit, is a nullity, as is their said pretended canvass of the returns of the votes of the several counties of the State cast at said election for said officers ; that by reason of the failure and refusal of the said Board to canvass and count and enumerate all the votes of all the counties of the State cast at said election for the said office of Governor, on file in the office of said Secretary of State, and upon the completion of the said canvass and count and enu-

meration, to do further, as required of them by law in such case made and provided, the said Drew is prevented from receiving the certificate to which he is entitled certifying that he has been elected to said office; that by the failure of said Board to canvass and count and enumerate the votes of the said counties of Jackson, Hamilton, Manatee and Monroe, as shown by the returns of said election on file in said office of the Secretary of State, they have made it to appear that said Stearns has been elected to said office of Governor; whereas, if they had canvassed and counted and enumerated the said returns of the votes cast in said counties, together with like returns from the other counties of the State, it would manifestly have appeared, and would manifestly appear, that the said Drew was and has been elected to said office; that returns have been received of the said election at the office of the Secretary of State from the several counties of the State wherein elections have been and were held on said 7th day of November for the election of Governor and Lieutenant-Governor and members of the Legislature, and that it is the duty of the said Secretary of State, and the said Attorney-General, and the said Comptroller, to meet at the office of the Secretary of State, and proceed to canvass the returns of the said election, and determine and declare who has been elected to the said office of Governor of said State as shown by said returns; that the said State Canvassing Board, in canvassing the return from the County of Jackson, went behind the return of the County Canvassing Board of said County and threw out the Campbellton precinct vote where the said George F. Drew received two hundred and fourteen majority of the votes cast at said precinct, and they threw out the whole vote of Friendship Church precinct in said county where the said Drew received one hundred and one majority of the whole vote cast at said precinct; that the said Board went behind the return from the county of Monroe and threw out the entire vote of one precinct in said county, to-wit: precinct known as number three (3), at which said Drew received a majority of three hundred and forty-two votes (342) of the entire vote cast there; said Board refused to canvass and count the return from the county of Manatee, in which county, as shown by the said returns, the said George F. Drew re-

ceived a majority of two hundred and thirty-six (236) votes of the entire vote cast in said county; that said Board went behind the return from Hamilton county and threw out the vote of a precinct in said county that gave the said George F. Drew a majority of one hundred and thirty-eight (138) votes of the whole vote cast there; that the said Board, in throwing out the entire vote cast at said two precincts in Jackson county, and at said one precinct in Monroe county, and at said one precinct in Hamilton county, claimed the right to act, and did act upon *ex-parte* affidavits to impeach the returns from said counties; that said Drew alleges that said Board, in making their said pretended canvass of the returns from the said counties of Jackson, Hamilton, Monroe and Manatee, exceeded their powers, and that they should have confined their canvass of said returns to what was shown or appeared on the face of said returns, the same not appearing to be unintelligible or fraudulent, but genuine and *bona fide*; that said Samuel B. McLin, Secretary of State, and William Archer Cocke, Attorney-General, and Clayton A. Cowgill, Comptroller, have failed and refused to meet and convene and re-assemble as a Board of State Canvassers and canvass and count all the election returns on file in said office of said Secretary of the said election for the office of Governor, held on the 7th day of November, 1876, from each and every of the counties in this State wherein an election was held for said office, and especially have they failed and refused to canvass and count such election returns from the said counties of Jackson, Hamilton, Manatee and Monroe, and have refused to determine from a canvass and count and enumeration of all the votes cast for the said office of Governor at said election in all the counties of the State, as shown by said election returns received at the office of the Secretary of State, who has been elected by the highest number of votes to said office as shown by said returns, and as such Board to make and sign a certificate as required by law containing in words written at full length the whole number of votes cast at said election as shown by the said returns for the said office of Governor of said State of Florida, and the number given for each person voted for for said office, and in and by such certificate declare the result of said election for Governor of said State; that by reason of

said failure and refusal of said Samuel B. McLin, Secretary of State, said William Archer Cocke, Attorney-General, and said Clayton A. Cowgill, Comptroller, the Board of State Canvassers aforesaid, the said Drew has been prevented, and is prevented, from receiving and obtaining from the said Secretary of State the certificate which is made by law *prima facie* evidence of his election to said office, and to which by law he is entitled; that said George F. Drew, the petitioner, is entirely without remedy in the premises, unless it be afforded by the interposition of this court through writ of mandamus:

AND WHEREAS, The said George F. Drew prays that the writ of mandamus may be issued by this court and directed to the said Samuel B. McLin, Secretary of State, the said William Archer Cocke, Attorney-General, and the said Clayton A. Cowgill, Comptroller, commanding them forthwith to meet and convene and re-assemble as a Board of State Canvassers in the office of the Secretary of State, to canvass and count all the election returns on file in said office of said Secretary of State of the election for the office of Governor held on the 7th day of November, 1876; and that as such Board of State Canvassers, to canvass and count the election returns for the said office from each and every of the counties of this State wherein an election was held for said office; and, especially, to canvass and count the said election returns from the said counties of Jackson, Hamilton, Manatee, and Monroe, and to determine from a canvass and count and enumeration of all the votes cast for the said office of Governor at said election in all the counties of the State, as shown by the election returns of said election as received at the office of the Secretary of State, who has been elected by the highest number of votes to the said office of Governor as shown by said returns; and commanding them that they do as such Board make and sign a certificate as required by law, containing in words written at full length the whole number of votes given at said election as shown by said returns for the said office of Governor of the State of Florida, and the number of votes given for each person voted for for said office, and in said certificate declare the result of said election for Governor of said State; and praying that such other order may be had in the premises as justice may require:

Now, therefore, we being willing that full and speedy justice should be done in the premises, do command you, Samuel B. McLin, Secretary of State, and you, William Archer Cocke, Attorney-General, and you, Clayton A. Cowgill, Comptroller, that you forthwith meet, and convene, and re-assemble as a Board of State Canvassers in the office of the Secretary of State, to canvass and count all the election returns on file in the said office of the Secretary of State, of the said election for the office of Governor held on the 7th day of November, A. D. 1876, and that as such Board of State Canvassers you canvass and count the election returns for the said office from each and every of the counties of this State wherein an election was held for said office, and, especially, that you do canvass and count the election returns from the said counties of Jackson, Hamilton, Manatee, and Monroe, and that you do determine from a canvass and count and enumeration and tabulation of all the votes cast for the said office of Governor at said election in all the counties of the State, as shown by the election returns of said election received at the office of the Secretary of State, who has been elected by the highest number of votes to the said office of Governor as shown by said returns, and that you do as such Board make and sign a certificate as required by law, containing in words and figures written at full length, the whole number of votes given at said election as shown by the said returns for the said office of Governor of the State of Florida, and the number of votes given for each person voted for for said office, and in said certificate declare the result of the said election for Governor of said State, or that you show cause why you have not done so before our Supreme Court at the Capitol in Tallahassee at 11 o'clock a. m. on the 14th day of December, A. D. 1876, and have you then there this writ.

Witness the Hon. E. M. Randall, Chief-Justice of the Supreme Court of Florida, at Tallahassee, this 13th day of December, A. D. 1876, and the seal of said court.

FRED. T. MYERS,
*Clerk of the Supreme Court of Florida.*

This writ having, on the 14th day of December, been returned duly served, the Court ordered that the issues be made up by the 16th day of December. On the last named

day, the respondents, McLin and Cowgill, filed an answer,. and the respondent, Cocke, a separate answer.

The answer of McLin and Cowgill is as follows:

IN THE SUPREME COURT OF THE STATE OF FLORIDA—SPECIAL. TERM, DECEMBER, 1876.

In the matter of the petition of George F. Drew for and the alternate writ of mandamus commanding Samuel B. McLin, Secretary of State, William A. Cocke, Attorney-General, and Clayton A. Cowgill, Comptroller, members of the Board of Canvassers of Florida, to reassemble as a Board of State Canvassers and count all the election returns on file in said office in said Secretary of State of election for the office of Governor, held on the 7th day of November, 1876, and that as such Board of State Canvassers they do canvass and count the election returns for said office from each and every of the counties of this State, wherein an election was held for said office, and especially that they do canvass and count the said election returns from the said counties of Jackson, Hamilton, Manatee, and Monroe; and that they do determine, from a canvass and count and enumeration of all the votes cast for the said office of Governor at said election in all the counties of the State, as shown by the election returns of said election as recorded at the office of the Secretary of State, who has been elected by the highest number of votes to the office of Governor as shown by said returns; and that they do as such Board make and sign a. certificate as required by law:

*To the Honorable the Supreme Court of the State of Florida:*

The said Samuel B. McLin and Clayton A.. Cowgill ask. leave to say that they protest and aver now and at all times that this honorable court has no jurisdiction in the premises as set forth in the alternate writ issued in this matter, and cannot grant what the petitioner therein prays for and which said alternate writ commands to be done, unless good reasons are shown why they should not be called upon to act as commanded.

But for answer thereunto, or to so much thereof as is necessary to answer unto, the said Samuel B. McLin and Clay--

ton A. Cowgill, two of the respondents in said matter, for themselves jointly and severally, pray leave to say :

That they admit that there was an election held on the 7th day of November, 1876, as set forth in said alternate writ, and that the persons to be voted for at said election were as therein set forth. And they further admit that the said George F. Drew was eligible as alleged, and that there were no other candidates for the office of Governor except the said George F. Drew and Marcellus L. Stearns as alleged ; but that, according to the best recollection of these respondents, there were two or three scattering votes cast at said election for persons other than those hereinbefore named as candidates for the office of Governor.

But they deny that, as appears by the returns of the said election received at, and on file in, the office of the Secretary of State, that the true vote cast at said election for George F. Drew was twenty-four thousand six hundred and thirteen (24,613), and that the true vote cast for said Marcellus L. Stearns was twenty-four thousand one hundred and sixteen (24,116).

And these respondents, further answering, say that they, with the said William Archer Cocke, did convene and organize as a Board of State Canvassers at the office of the Secretary of State on the said twenty-seventh day of November, 1876, and did proceed to canvass the returns from all the counties in which an election had been held, and continued said canvass until the said Board had canvassed and passed upon returns from all the counties in said State, and did ascertain from such canvass of the returns from all the counties in said State the true vote cast at said election for each and every of the persons voted for at said election, and did declare the result thereof and certify the same as required by the law providing for the holding and conduct of said election, as required by the law of said State as enacted in 1868, and as finally amended in 1872, which said law was in force at the time of and during the holding and conduct of said election, and is still in force now and at the time of the filing of the petition and the issuance of the writ herein now being answered unto.

And that said canvass of the said several returns was fully completed and ended on the early morning, to wit : at the hour of about half-past one o'clock of the sixth day of

December, 1876, and the said Board by its unanimous vote so declared; and that nothing remained to be done thereafter to complete the entire labors of said Board but the preparation of the proper certificate of the result thereof as had been ascertained, and the preparation of which certificate the Board unanimously directed its clerk to prepare, which was thereafter done and signed by these respondents and duly filed in the office of the Secretary of State, these respondents constituting a majority of said Board. That said Board then adjourned without day.

And these respondents, further answering, say that they deny that in the canvass aforesaid, in the ascertainment of the result of said election, in making up and certifying to the same as required by said law of 1868, they were guilty of any usurpation whatever.

And these respondents, further answering, say that in relation to the said county of Manatee, it appeared from the return of said county and from evidence received by said Board, that the said return was so irregular and false and fraudulent that said Board was unable to determine the true vote for any officer or member voted for at said election, and said Board so certified, and they did not include such return in their determination and declaration in the said certificate of the result of said election hereinbefore referred to.

And these respondents, further answering, say that as to the counties of Jackson, Hamilton and Monroe, it was shown by evidence that the returns therefrom were severally false and fraudulent, and that the Board determined from the evidence, with reference to each of said counties, what the true vote therein was for each officer and member voted for at such election, and the result of such determination was acted upon in declaring the result of said election and certifying thereto as aforesaid.

And these respondents, further answering, say that in the action that was had by said Board as aforesaid as to the counties of Hamilton and Monroe, the vote of said Board was unanimous, and in the action in relation to Jackson county the action was by a majority of said Board.

And further, that as to the said counties, Manatee, Jackson, Hamilton and Monroe, showing was made and evidence

received from both parties, and unanimously acted upon by said Board.

And these respondents, further answering, say that as to that part of the suggestion as contained in said writ, that said Drew is entirely without remedy, except through the intervention of this Honorable Court by its writ of mandamus, they respectfully submit that each and every of the officers and members voted for at such election have full, perfect and ample remedy; the former through the courts of law by relation in the nature of *quo warranto*, and the latter by and through the respective branches of the Legislature to which they may claim to have been duly and legally elected; and that any action which might be ordered by this Honorable Court through the writ prayed for would have no legal effect upon either forum, who might, in the pursuit of the proper remedy, be called upon to act.

And these respondents further respectfully submit to this Honorable Court, that said Board having canvassed all the returns from all the counties in said State, in which an election was held on the said 7th day of November, and determined and declared who had been elected to any office or member by the true vote cast at said election, and made and signed the certificate required by law in such case made and provided, and adjourned without day, that its powers as a Board ceased.          SAMUEL B. McLIN,
                                             *Secretary of State.*
                              C. A. COWGILL,
                                             *Comptroller.*

Sworn to and subscribed before me this 16th day of December, A. D. 1876.          FRED. T. MYERS,
          *Clerk of the Supreme Court of Florida.*

J. P. C. EMMONS, *of Counsel for Respondents.*

The answer of Attorney-General Cocke is as follows:

IN THE SUPREME COURT OF THE STATE OF FLORIDA.

*The State of Florida ex rel. George F. Drew, vs. Samuel B. McLin, Secretary of State, C. A. Cowgill, Comptroller of Public Accounts, and Wm. Archer Cocke, Attorney-General for the State of Florida.*

The separate answer of Wm. Archer Cocke to an application before the Supreme Court of the State of Florida for

a writ of mandamus against the said S. B. McLin, C. A. Cowgill, and your respondent, the said William Archer Cocke, filed by George F. Drew and others :

The said respondent answers and says that he neither denies nor assents to the statements of law set forth in the said paper asking the intervention of the writ of mandamus against the members of said Canvassing Board. Your respondent further states that the charge of rejecting the votes of Manatee, Hamilton, Monroe and Jackson counties is not applicable to him in conducting the canvass for the election of State officers, which occurred in this State on the 7th of November ultimo.

He further states, it was his opinion that the votes in the counties aforesaid should have been counted, and he so indicated by his vote as a member of the State Canvassing Board.

This respondent, further answering, disclaims that he has usurped power as a member of said Board, or advised others so to do. But in relation to the allegations in the petition for a mandamus, to the contrary notwithstanding, he avers that he has followed the law in all respects, and submits the questions of law involved in this case to the Honorable Court.

WM. ARCHER COCKE,
*Attorney-General and ex-officio member of the State Canvassing Board of Florida.*

The relator then moved to strike out the answer of the respondents, McLin and Cowgill, because the same is evasive, argumentative and uncertain and insufficient, and does not state facts so that a judgment of the Court can be had thereon.

Afterwards the following order was made by the Court on the 16th of December :

The motion to strike from the files the answer of the respondents, Cowgill and McLin, having been argued and submitted, it is considered by the Court that as to the rejection by the respondents, as State Canvassers, of the election returns or the papers purporting to be returns from any county, the answer be amended so as to set forth and show the specific causes and grounds for such rejection, and the

defects existing in such returns ; and also, that as to the rejection by the said respondents, as such Canvassers, of any portion of the votes included in any return from any county, the answer be amended so as to set forth the specific causes and grounds of such rejection in each and every of the instances of such rejection ; and that the amendments be made and filed by Monday, the 18th instant, at 12 o'clock at noon.

On the day last named, the respondents, Cowgill and Mc-Lin, filed an amended return, which is as follows:

IN SUPREME COURT, SPECIAL TERM, DECEMBER, 1876.

George F. Drew vs. Samuel B. McLin et al.—Mandamus.

And these respondents, the said McLin and Cowgill, in compliance with the order of this Honorable Court, make these amendments to the return filed to the alternate writ of mandamus issued herein :

And say, that said Board did not include the return from said county of Manatee in its determination and declaration of the vote cast at said election, upon the ground of irregularity and fraud in the conduct of the election on said 7th day of November, 1876.

And these respondents further say : That in the county of Clay twenty-nine votes were added to the vote cast for George F. Drew, and six votes were added to the vote cast for Marcellus L. Stearns, upon the ground that said votes had been improperly rejected by the County Canvassers of the vote of said county at said election.

And further, in relation to said county of Clay : That four votes cast for George F. Drew at said election were deducted, and two votes cast for Marcellus L. Stearns were deducted, upon the ground that said votes were cast by non-residents of the county.

And these respondents further say : That in relation to the county of Hamilton, the vote of precinct No. 2 was deducted from the vote cast in said county as appeared from the returns upon the ground of gross violation of the election law, and fraud in the conduct of the election.

These respondents further say : That five votes were deducted from the vote cast in Hernando county, as appeared

from the returns therefrom, upon the ground that said votes were illegally cast.

And these respondents further say that 557 votes were deducted from the vote cast in the county of Jackson, as appeared from the face of the return, upon the ground of irregularity and gross fraud in the conduct of the election.

These respondents further say : That two votes were deducted from the vote cast in Leon county, as apparent upon the face of the return, upon the ground that said votes were illegal.

And these respondents further say : That the Board deducted from the vote cast in the county of Jefferson, as appeared from the return, 61 votes, upon the ground that said 61 votes were fraudulently cast.

And these respondents further say : That seven votes were deducted from the vote cast in the county of Orange, upon the ground that said votes were illegally cast.

And these respondents further say : That the vote of one precinct in the county of Monroe was deducted from the vote, as appeared from the return from said county, upon the ground of irregularity in the conduct of the election, and fraud in the conduct of the inspectors of said election in said precinct.

And these respondents further answering say, as to the said county of Manatee : that said Board did not include the vote cast in said county as it appeared on the face of the return, upon the ground that it appeared in evidence that there was such irregularity and fraud in the conduct of the election in said county in receiving votes of persons not registered, and there being no registration list furnished inspectors, and no designation of voting places, and no notice of election, that said Board could not ascertain the true vote. SAMUEL B. McLIN,

C. A. COWGILL.

Sworn to and subscribed before me this 18th day of December, A. D. 1876.

W. M. McINTOSH,
*Notary Public for Leon County.*

J. P. C. EMMONS, *of Counsel for Respondents.*

And upon the same day the relator filed the following

demurrer to the answer of the respondents, McLin and Cowgill:

SUPREME COURT OF FLORIDA, DECEMBER, SPECIAL TERM, A. D. 1876.

State of Florida *ex rel.* George F. Drew *vs.* Samuel B. Mc-Lin *et als.*—Mandamus.

The relator, George F. Drew, demurs to the answer of the respondents, McLin and Cowgill, as amended, on the ground that the same is insufficient in law.

### Points of Demurrer :

1st. The Board of State Canvassers could not lawfully exclude or reject the county return or votes from the county of Manatee, or the precinct returns or votes from the other counties, stated in the answer to have been excluded or rejected, upon the grounds stated in said return or answer; nor could they legally make any addition of votes to any returns as stated in said answer.

2d. The said answer shows that said Board illegally excluded the return from the county of Manatee, and made the additions to and deductions from the votes as they appear by the returns from the other counties mentioned in their said answer.

3d. The adjournment of the Board before having made a legal canvass of the votes of the several counties as shown by the returns therefrom, is no reason in law why they should not re-assemble and canvass the votes of the several counties as they appear upon the face of the returns.

4th. The allegation in the said answer that each of the officers and members voted for at said election has his remedy as therein stated, is no sufficient reason in law why the relator should not have his remedy in the premises by mandamus. R. L. CAMPBELL,
R. B. HILTON,
GEO. P. RANEY,
*For Relator.*

We certify that the above demurrer is, in our opinion, well founded in law, and we further say it is not interposed for delay. R. L. CAMPBELL,
R. B. HILTON,
GEO. P. RANEY.

December 18, 1876.

The respondents, McLin and Cowgill, filed the following joinder in the demurrer:

Respondents join in demurrer.

J. P. C. EMMONS,
*Counsel for Respondents.*

The section of the statute defining the powers and duties of the Board of Canvassers is as follows:

SEC. 4. On the thirty-fifth day after the holding of any general or special election for any State officer, member of the Legislature, or Representative in Congress, or sooner if the returns shall have been received from the several counties wherein elections shall have been held, the Secretary of State, Attorney-General, and the Comptroller of Public Accounts, or any two of them, together with any other member of the Cabinet who may be designated by them, shall meet at the office of the Secretary of State pursuant to notice to be given by the Secretary of State, and form a Board of State Canvassers, and proceed to canvass the returns of said election, and determine and declare who shall have been elected to any such office, or as such member, as shown by such returns. If any such returns shall be shown or shall appear to be so irregular, false or fraudulent that the Board shall be unable to determine the true vote for any such officer or member, they shall so certify, and shall not include such return in their determination and declaration; and the Secretary of State shall preserve and file in his office all such returns, together with such other documents and papers as may have been received by him or by said Board of Canvassers. The said Board shall make and sign a certificate, containing, in words written at full length, the whole number of votes given for each office, the number of votes given for each person for each office, and for member of the Legislature, and therein declare the result, which certificate shall be recorded in the office of the Secretary of State in a book to be kept for that purpose; and the Secretary of State shall cause a certified copy of such certificate to be published once in one or more newspapers printed at the seat of government. Chap. 1868, Laws of Florida.

*R. L. Campbell, R. B. Hilton,* and *Geo. P. Raney, Eqrs.,* for the Relator.

Brief of *Mr. R. L. Campbell:*

The respondents are, under the act of 27th February, 1872, purely ministerial officers, possessing no discretionary power beyond what may be required to determine whether the returns of the County Canvassers are authentic, regular, and intelligible. Bloxham vs. State Canvassers, 13 Fla., 55 ; Cooley Con. Lim., 621 ; O'Ferrel vs. Colby, 2 Maine, 180 ; Mays vs. Freeland, 10 Mo., 630 ; Atty. Genl. vs. Sturs, 44 Mo., 223 ; Bland vs. Rodman, 43 Mo., 257 ; Atty. Genl. vs. Barstow, 4 Wis., 749 ; Bacon vs. York Co., 26 Maine, 491 ; Taylor vs. Taylor, 10 Maine, 107 ; State vs. Cann, 10 Iowa, 343 ; People vs. Vancleve, 1 Mich., 362 ; Kisler vs. Cameron, 39 Ind., 488.

The canvass made by respondents, as set forth in their answer to the alternative writ, was not the discharge of ministerial duty, but the exercise of judicial functions. Authorities above cited.

No authority can be derived from the act of 1872 for the exercise of such functions by the respondents ; for either it must be so construed as to avoid a conflict with 1 Sec. VI. Art. of the State Constitution, (Cooley Con. Lim., 184, Ogden vs. Sanders, 12 Wheat., 270,) or it must be declared void.because of such conflict.

This is the appropriate remedy to compel respondents to perform the ministerial duty of ascertaining the vote from all the returns, there being no question as to their authenticity, regularity, and intelligibility. Bloxham vs. State Canvassers, 13 Fla., 55 ; People vs. Rivers, 27 Ill., 243 ; O'Ferrel vs. Colby, 2 Maine, 180 ; Mays vs. Freeland, 10 Mo., 630.

Brief of *Mr. R. B. Hilton:*

### *Construction of the Statute.*

The concluding words of the first sentence of section 4 are as follows : " Canvass the returns of said election and determine and declare who has been elected as *shown* by the returns." There is no difficulty in deciding that "shown" here means *shown by the returns.* When, in the next sentence, the same word " shown " is employed, and no word or words to signify *how* "shown," what else can be the meaning than, as before, *shown by the returns ?* The fact that the word " appear " is also there used is no indication of any other meaning being involved in the word " shown," as used in the second instance, than as employed in the first.   If it be answered that the word " appear " here used would indicate whatever is told by the face of the returns, and that the word "shown" must indicate something apart from, and outside of what is exhibited by the "returns," and in addition thereto, the reply is that the word "shown" precedes in the sentence the word "appear," and it cannot be that a more comprehensive term preceding one less so is intended to enlarge the signification of the latter.   The defects then in the " returns " covered by the words " irregular, false or fraudulent," must be such defects as are " shown " by or appear from the " returns " themselves.

What is meant by the words " true vote ? "   Manifestly the *true number of votes* cast and returned.   They cannot mean the number of lawful voters who voted, for that is something utterly impossible of determination by the Board. And besides, if that could be determined by them, unless they could further determine, not only the number of legal votes cast, but for whom cast, they would not advance one step towards determining who was elected.

The duty of the Board as prescribed in the concluding sentence seems unmistakably to indicate what has already

been said.    The certificate there required of them must set
forth in words, written at full length, *the whole number of
votes given*—not *legal* votes—they are not permitted to de-
termine, and have no means given them for ascertaining
the legality of a single vote, much less " the whole number"
of such legal votes.

But the Board can, from the returns, unless they *show*
fatal *irregularity*, fraud or falsehood on their face, (which is
not pretended,) determine the *true* and actual number of
votes cast for the several candidates.

The legality of the votes cast is a question for other tribu-
nals possessing the constitutional power and the requisite
machinery for its determination, as the Legislature in each
branch manifestly has in the case of its members, and as the
Judiciary has in the case of Governor and Lieutenant-Gov-
ernor on *quo warranto*.

It may be further observed as to the word "shown" used
here by the Legislature to indicate what is exhibited by the
"returns"—it seems to have obtained an almost special and
specific use by courts and law writers when speaking of
Canvassing Boards and the bounds and limitations of their
powers.    Cooley Con. Lim., 621-2-3; Brightley's Election
Cases, 305-6; 7 Iowa, 200; 36 Wis., 507.

If, as above stated, the returns be *fatally* defective, what
then?  *The Board must so certify and not include;* they
cannot do something else, such as take testimony, or hear
evidence from which to obtain, aside from the returns, the
number of legal votes cast.    State vs. Martin, 1 S. C., 30.

In the construction of the statute I have endeavored to
steer clear of the constitutional difficulty involved in the
claim made for the Board to the exercise of judicial powers
in taking of testimony, and hearing of evidence, and making
a final determination of the rights of parties.

If the statute has undertaken to give them such a tremen-
duous and far-reaching power, there ought to be something

in its language clearly indicating it. But the power does appear in the language of the statute. If conferred, it is by reasonable implication, not by express grant. State vs. Acting Board, 1 S. C., 30.

"Powers granted by statute cannot be enlarged by implication so as to include powers of an entirely different nature, as for instance judicial powers, where only ministerial are granted." 26 Maine, 569.

The court, if possible, will so construe a statute as to avoid a conflict with the constitution. Dow vs. Norris, 4 N. H., 17; Newland vs. Marsh, 19 Ill., 384.

What is the constitutional inhibition of the powers claimed by, for, and exercised by the Board?

It is found in the division of powers of government into three separate departments, a principle which lies at the very foundation of the American system of free governments and of constitutional liberty wherever it exists.

This division is in no other Constitution with which I am acquainted so carefully guarded, especially in the isolation and separation of the judiciary, as in that of Florida. Article III.; Article VI., Sec. 1, 18; Article V., Sec. 17; Graham vs. Ponder, 4 Fla., 23; Cooley Con. L., 87; Hardenbury vs. Kidd, 10 Cal., 402; Llewellyn vs. Marsh, 36 Ill., 359; Commonwealth vs. Jones, 10 Bush, 725; Chandler vs. Nash, 5 Mich., 409.

What is the nature and character of the right as to which the Board has rendered its judicial decision?

It is the right to the *certificate of election* to the office of Governor.

That certificate, like any other instrument of title, is *property*, and had an intrinsic value. 7 Bush, 453; Bloxham's Case, 13 Fla., 55.

But our Declaration of Rights (8 sec.) says: "No person shall be deprived of life, liberty, or *property*, without due process of law."

By whom is the right to this certificate *adjudged* against George F. Drew and in favor of M. L. Stearns? Not by the judiciary, but by a branch of the administrative department of the government, to wit: three members of Governor Stearns' Cabinet.

But it may be answered that it matters not as regards the relator whether he is deprived of the certificate by a ministerial determination or judicial decision on the part of the Board. Far otherwise; for if the adverse determination is ministerial, it may be controlled, if judicial not. Besides the opportunities for, and dangers of, and temptations to a lawless, wilful, or corrupt determination, are far greater if the Board may go outside of the returns and determine according to their own "sweet wills," and upon such testimony as they may choose to admit, the rights of adverse candidates to office.

And so, as the powers of the Board are enlarged and the danger from its exercise is increased, is all redress, and right of revision of their action, taken away.

They are *inferior* judges, with jurisdiction nevertheless commensurate with the State, deciding issues of the most tremendous import, and yet judges from whose judgments there lies no writ of error or appeal! ·

Other refuge failing, we are told to betake ourselves to Sec. 6 of Art. IV. of the Constitution: "The Legislature at its first session after the ratification of this Constitution shall by law provide for the registration;" but surely we need go no further. The grant of the transcendent power claimed to have been given to the Board by the Legislature was not by an act of the first session, but of a session long subsequent to the first.

The objection taken that the Board having met, and, as they allege, having completed the canvass, are *functus officio*, and not subject to the pending process, was one of

the questions submitted to the court in the Bloxham case (13 Fla.) and ruled upon.   See page 72.

Numerous other decisions to the same effect might be cited, but this court having once expressly determined it, further citations might seem impertinent.

So also as to the plea that the relator has another remedy by *quo warranto*.

In case of Ellis vs. County Commissioners, 2 Gray, 370, the court even granted the mandamus pending a *quo warranto*.   And why not?   Surely it is no new thing for a party to seek and procure by one suit the evidence necessary to maintain his cause in another.

The attention of the court is especially called to the late South Carolina cases decided within the last few weeks. The language of the South Carolina statute upon which the Supreme Court of that State in the late case of State, *ex rel*. Sims, *et al*., vs. Board of State Canvassers of Elections, granted a mandamus to the Board of Canvassers, is as follows : " Upon such statements (those of the County Canvassers) they shall proceed to determine and declare what persons have been by the greatest number of votes duly elected to such offices.   They shall have power, and it is made their duty, to decide all cases upon protest and contest that may arise, when the power to do so does not by the Constitution reside in some other body."   A decision could hardly be more directly in point than that of the South Carolina Supreme Court in this case.

In illustration of various points embraced in this discussion the following citations are made :   27 Ill., 242 ; 29 Ill., 419 ;  2 Ind., 423 ;  9 Ala., 338 ;  2 Gray, 370 ;  7 Bush, 453 ; 10 Bush ;  17 Ill., 167 ;  36 Wis., 498.

In conclusion, I quote the language of the Supreme Court of Wisconsin in the case last cited, only varied a little to adapt it to the case now under consideration :

" A  Board  of Canvassers of Elections, who  illegally and

wantonly disfranchise electors by rejecting their votes, commits a most serious offence, an offence which strikes at the very foundation of our system of government, and which cannot be too seriously censured. He who, by fraud or by wilful disregard of his sworn duty, defeats the will of the people as expressed by their votes, commits a *political crime next to treason, and nearly akin* to it, and this court will never fail, on any proper occasion, to characterize such an offence in befitting terms."

Whether or not the respondents have been guilty of the *great crime* here named is not for me, in this forum, and in these proceedings, to say. But I do say, and the pleadings authorize me to say it, that the will of the people of Florida, as expressed by their votes for Governor of the State, has been defeated by this State Canvassing Board, as far as their action could defeat it.

Brief of *Mr. J. P. C. Emmons* for Respondents:

The State Board in canvassing went behind the *face* of the returns. Relator claims there is no exercise of judgment or discretion to be exercised by said Board.

Statute of 1868 (amendment of 1872) requires of the Board an examination as to the *regularity, false* or *fraudulent* character of the returns. This necessarily contemplates *inquiry;* evidence of some kind must be received and passed upon. If any evidence is to be received, if any judgment or discretion is to be exercised in relation to it, then the evidence would be such as would ordinarily be received in any judicial proceeding, and weighed and applied in like manner.

If this be so, then it is contended by the respondents that mandamus will not lie to control or direct its exercise.

If the Board has *acted* in relation to *all* the duties im-

posed by the statute, this Court will not interfere or review that action in this proceeding.

To sustain this view we cite: Towle vs. State, 3 Florida, 202; People vs. Governor, 29 Mich., 320; People vs. Wayne Co., 1 Mich., 359; Arberry vs. Beaver, 6 Texas, 457; Kendall vs. U. S., 12 Peters, 610; Decatur vs. Paulding, 14 Pet., 509; State vs. Hetzel, 8 Nevada, 309; Clark vs. McKenzie, 7 Bush, 527; 36 Wis., 505. Court say the statute pointed out the duty of the Board in *unmistakable terms.* If the Board did not send for amended returns, the Board were bound by the *returns* by *statute.*

If respondents are correct in construing the statute, and the Board has completed its labors under it, this Court will not call upon it to re-convene; as a Board it is *functus officio.*

The Bloxham case, 13 Fla., 55, is not one in conflict with this view. There it was conceded the Board had not canvassed or acted upon all the returns.

The case in 43 Missouri, 256, State vs. Rodman, is one like the Bloxham case; *all* the returns were not acted upon.

The statute regulated how the vote should be counted.

The cases cited by petitioners are all in favor of our proposition. Wherever the Courts have granted the writ, it has been done where a statute of the State controlled.

If Court should grant the peremptory writ *as asked,* it will call for the counting of the votes cast in Manatee, Hamilton, Jackson and Monroe Counties, as it appears from the *face* of the returns, and the Board could not reject either, even though they should appear or were shown to be *forged.*

Under such a statute the Court will not direct the Board *how* to do its duty.

In Hardenburgh et al. vs. Kidd et al., 10 Cal., 402, the Legislature conferred upon the Court of Sessions a *taxing*

*power.* There was nothing in the Constitution of California which even impliedly conferred upon the judiciary a taxing power. The subject is not even referred to in the judiciary provisions of the Constitution.

In the case, 5 Mich., 409, Chandler vs. Nash, where the act gave to notaries public judicial powers, and authorized such proceedings as were in the nature of concurrent jurisdiction with the established Courts, as recognized by the Constitution, the Court held there was no implied power to vest such officers with any power but purely ministerial, saying notaries were in no way appointed under the Constitution, but created by the statute.

In our Constitution, Art. 14, Secs. 2, 3 and 7, are provisions on the subject, and the Legislature has, under these provisions, provided for an inquiry into any abuse of right as contemplated in these sections.

There is nothing in Cooley, as cited by relator, p. 421, and the authorities there cited, that is opposed to the idea that the statute shall control. (See p. 325 of 29 Mich., opinion of Cooley as to some *mingling* of powers.)

Sec. 3 of Art. 14 says that a subject of a foreign country, when he offers to vote under this Constitution, shall present certain evidence, otherwise he shall not be permitted to vote.

The Legislature has fixed, under the Constitution, the mode, time and place of conducting and *supervising* elections, and returns, and for a final adjustment of all previous action.

In Pillsbury et al. vs. Aldermen of Charleston, 1 Richardson's New Series, 1868 and 1870, p. 30, the petitioners alleged that relator received the majority of the *legal votes.* In case at bar it does not. But the reliance of petitioner from this case is that the Board went beyond its power; that it must be confined to the express delegation, and not act upon implied power. On page 41, Judge Willard says:

"That portion of the mandate that relates to the declaration of the election must be regarded as fixing the character of proceeding and the issues triable under it." The statute is cited on page 38. They shall *declare the election*.

MR. JUSTICE WESTCOTT delivered the opinion of the court on the demurrer.

The view that the Board of State Canvassers is a tribunal having power strictly judicial, such as is involved in the determination of the legality of a particular vote or election, cannot be sustained. The Constitution of this State (Article III., and Section 1 of Article VI.,) provides that "the powers of the government of the State of Florida shall be divided into three departments: Legislative, Executive and Judicial; and no person properly belonging to one of the departments shall exercise any functions appertaining to either of the others, except in those cases expressly provided for by this Constitution."

"The Judicial power of the State shall be vested in a Supreme Court, Circuit Court, County Courts, and Justices of the Peace."

All of the acts which this Board can do under the statute must be based upon the returns; and while in some cases the officers composing the Board may, like all ministerial officers of similar character, exclude what purports to be a return for irregularity, still everything they are authorized to do is limited to what is sanctioned by authentic and true returns before them. Their final act and determination must be such as appears from, and is shown by the returns from the several counties to be correct. They have no general power to issue subpœnas, to summon parties, to compel the attendance of witnesses, to grant a trial by jury, or do any act but determine and declare who has been elected as shown by the returns. They are authorized to enter no judgment, and their power is limited by the express words

of the statute, which gives them being, to the signing of a certificate containing the whole number of votes GIVEN for each person for each office, and therein declaring the result *as shown by the returns.* This certificate thus signed is not a judicial judgment, and the determination and declaration which they make is not a judicial declaration—that is, a determination of a right after notice, according to the general law of the land as to the rights of parties, but it is a declaration of a conclusion limited and restricted by the letter of the statute. Such limited declaration and determination by a Board of State Canvassers has been declared by a large majority of the courts to be a ministerial function, power and duty, as distinct from a judicial power and jurisdiction. Indeed, with the exception of the courts in Louisiana, and perhaps another State, no judicial sanction can be found for the view that these officers are judicial in their character, or that they have any discretion, either executive, legislative or judicial, which is not bound and fixed by the returns before them. The duty to count these returns has been enforced by mandamus so repeatedly in the courts of the several States of the Union, that the power of the courts in this respect has long since ceased to be an open question. Mr. Justice Smith, in the very celebrated case of the Attorney-General *ex rel.* Bashford vs. Barstow, (4 Wis., 813,) when speaking of the powers of the Board of State Canvassers, after reciting their power to "determine" the result of an election from the returns, says: "These are not judicial but purely ministerial acts." We must, therefore, decide that the general nature of the power given by the statute is ministerial, and that to the extent that any strictly and purely judicial power is granted, such power cannot exist.

This brings us to the consideration of the only remaining general question as to the powers of the Board under the statute.

While the general powers of the Board are thus limited

to and by the returns, still as to these returns the statute provides that "if any such returns shall be shown or shall appear to be so irregular, false or fraudulent that the Board shall be unable to determine the true vote for any officer or member, they shall so certify, and shall not include such return in their determination and declaration; and the Secretary of State shall preserve and file in his office all such returns, together with such other documents and papers as may have been received by him or by said Board of Canvassers." The words *true vote* here indicate the vote *actually cast*, as distinct from the *legal vote*. This follows, *first*, from the clear general duty of the Canvassers, which is to ascertain and certify the " *votes given* " for each person for each office; and, *second*, because to determine whether a vote cast is a legal vote is beyond the power of this Board. As to the words " irregular, false and fraudulent " in this connection, their definition is not required by the questions raised by the pleadings in this case. These respondents have not alleged that they have before them any return " so irregular, false or fraudulent " that they are unable to determine the actual vote cast in any county as shown by the returns; and nothing can be clearer than that the counting of returns sufficiently regular to ascertain the whole number of votes given, and signing a certificate, are merely ministerial acts. Under these pleadings the genuineness and regularity of the particular returns in question here are admitted. We will say, however, that the clear effect of this clause in the statute is that a return of the character named shall not be included in the determination and declaration of the Board; and that it has power to determine the *bona fide* character of the returns *dehors* their face. It is not within the power of this Board to refuse to count some of the votes embraced in a return and to count others embraced therein. They must count the whole of the return, or must reject it *in toto*. We will also say that the

powers here conferred are ministerial powers. It is true that in some respects these powers are something more than simple counting or computing, but they are powers which necessarily appertain to the discharge of every ministerial duty of this character. Their existence is no obstacle to the control of such officers by mandamus from a court having jurisdiction of the subject-matter.

In defining the duties of a Board of State Canvassers, where there was no like cause to this in the act defining their powers, this court, in 13 Fla., 73, said: "Their duties and functions are mainly ministerial, but are *quasi* judicial, so far as it is their duty to determine whether the papers received by them and purporting to be returns were in fact such, were genuine, intelligible, and substantially authenticated as required by law." The power to ascertain the regularity, the genuineness and the honesty of a return, are powers of like character to those mentioned and thus described in that case.

By the statute of 1868 the duty and power of the Board of State Canvassers was confined exclusively to the compiling of such returns of any election as should come to their hands from the County Canvassing Boards, and upon computation of the aggregate vote, as shown by such returns, to ascertain who had received the highest number of votes for any office, and to certify the result and declare therefrom who was elected to any office.

Under this act it became the duty of the State Board to determine ministerially the result, but necessarily, by the exercise of discretion and judgment, they must first determine that the papers before them were genuine, and that they were executed in form and matter substantially according to the requirements of the statute, and that they were, in fact and in law, the returns of the election. This, as was said by this court in a former case, was the exercise of a *quasi* judicial power. To the extent here indicated, a

judgment in the nature of a judicial function is necessarily exercised, for if it be otherwise, the whole law is inoperative in respect to the power of the Board to do any act whatever. The Constitutional provision that the officers of one department of the government are strictly forbidden to do any act, or to exercise any function pertaining to any other department, unless expressly provided for in the Constitution, must be taken in connection with the provision (Section 5, Article XIV.,) authorizing and requiring the Legislature to provide for ascertaining the result from " the returns of elections." This is clearly an express authority for providing that " returns of elections " must be received, considered and passed upon by such officers or persons as might be designated by the Legislature. And the necessary conclusion is that such officers may be authorized by the Legislature to inquire into the truth or falsity of the returns sent to them, and if, upon such inquiry, they be satisfied that the return does not show the vote actually cast at the election, but that it states a falsehood as to that fact, they may lay it aside and refuse to count the return as is provided in the act of 1872.

" If, as is here alleged by the relator, the respondents neglected to examine and include returns duly and legally made from several of the counties, and, therefore, but partially performed what they were by law required to do, it must be considered that they have not complied with the law, and they must be required to do so by means of the process here invoked." This leads to a careful examination of the pleadings herein made.

The case is before us upon a demurrer to the return of the respondents to the alternative writ. The alternative writ sets up the counting and computing by the Canvassers of the votes given as shown by the returns from certain counties named. It alleges that returns of said election from the several counties of the State, wherein elections have

been and were held on the 7th day of November for the election of Governor, have been received at the office of the Secretary of State ; that there has been a pretended canvass of such returns, and that as to the counties of Jackson, Hamilton, Monroe and Manatee, the said Canvassers have not confined themselves to a canvass of the returns from said counties, although the same were not unintelligible or fraudulent, but genuine and *bona fide*. The relator then prays direction to such Board of State Canvassers that they do canvass and count the election returns for the office of Governor from each and every of the counties of the State wherein an election was held for said office, and that they do canvass and count the said election returns from the said counties of Jackson, Hamilton, Manatee and Monroe. The writ then proceeds in the usual and proper form, which it is not necessary here to insert. The issues presented by the answers, original and amended, are special and precise, setting up in each case where the returns from any of the said counties were not counted and computed, the particular reason and cause for such action by the Board. The question arising upon the demurrer is, do these answers show sufficient cause in law why the peremptory writ should not be awarded? We examine each of the reasons assigned in the answer as to the several counties, being guided and controlled in our conclusion by our views of the powers of the Board as hereinbefore defined.

### As to the County of Jackson :

The answer sets up that five hundred and fifty-seven(557) votes were deducted from the votes cast in the county of Jackson, as appeared from the face of the return, upon the ground of irregularity and gross fraud in the conduct of the election.

Upon the face of this answer, and in view of the express allegations of the alternative writ as to the genuineness,

intelligibility and *bona fide* character of the return of the votes cast, the only question raised here is whether, under this statute, the Canvassers can reject a return of the votes cast, or any of the votes cast, for irregularity or fraud in the conduct of the election.

Whether irregularities or fraud in an election will authorize the rejection of a vote cast, counted and returned in a genuine, *bona fide* return, is a question of law not within the power of this Board to determine. If the return was regular, genuine and *bona fide*, as it was admitted to be by the pleadings, it was the duty of the Board to count it.

*As to the County of Hamilton :*

The answer alleges that there was a deduction made from the votes cast at one precinct, as appeared from the face of the return, upon the ground of gross violation of the election law and fraud in the conduct of the election. What has been said as to Jackson county covers this case, and there is no necessity for repetition.

*As to the County of Monroe :*

The answer alleges that the vote of one precinct was deducted from the vote as appeared from the return from said county, upon the ground of irregularity in the conduct of the election and fraud in the conduct of the inspectors of said election at said precinct. What has been said covers the matter of irregularity in the election. As to fraud in the conduct of inspectors at a precinct, it is not a ground upon which the Canvassers can reject a return from the county which is genuine and *bona fide*. What is fraud in such an inspector is a question of law; so also the question whether such fraud by inspectors can vitiate an election is a question of law. Both are judicial questions beyond the power of the Board to determine.

4

*As to the County of Manatee:*

The answer sets up that said Board did not include the return from said county of Manatee in its determination and declaration of the vote cast at said election, upon the ground of irregularity and fraud in the conduct of the election on said 7th day of November, 1876. The matter of irregularity and fraud here alleged has already been considered in the case of other counties.

The answer alleges further as to this county, that the Board did not include the vote cast therein, as it appeared on the face of the return, because it appeared in evidence that there was such irregularity and fraud in the conduct of the election in said county in receiving votes of persons not registered, and there being no registration list furnished inspectors, and no designation of voting places, and no notice of election, that said Board could not ascertain the true vote.

A return of *votes cast* in a county at a general election, of which notice is given throughout the State by the proper executive authority, no notice of election by local officers (county) having been given, is not a return either irregular, false, or fraudulent, within the meaning of the statute regulating and defining the powers and duties of the State Canvassers.

Like the question of the legality of a vote, this is a question of law to be determined by a court—a judicial question beyond the power and jurisdiction of a ministerial officer under the law, constitutional and statutory. A return of votes cast in a county at such *general election*, duly signed by acknowledged county officers, and regular in form, of which election no notice by county officers as to polling places is given, (the time of election being according to the general notice,) is a return which the State Canvassers must count, as it is neither irregular, false, nor fraudulent within

the meaning of the statute. Whether such vote is effective to vest the office is a question judicial in its character, which this court upon mandamus should no more determine than should the State Canvassers. Such Canvassers must count such returns, and so this court should order. Whether all these votes so returned are legal votes is another question, which neither the State Canvassers can determine in their action, nor should this court determine it when it is sought to direct them to perform ministerial duties. .

### As to the Counties of Hernando, Orange, and Leon:

The answer states that a number of votes were deducted from the returns of votes cast in said counties because they were illegally cast, and that a vote was deducted from the return of Jefferson county because it was fraudulently cast. These, as we have before said, are questions which the law does not authorize the Board to determine. They must count these returns, as they admit them by the pleadings to be returns within the meaning of the statute. They nowhere allege the returns to be so "irregular, false, or fraudulent," that they cannot determine the vote cast from them.

### As to the County of Clay:

The answer states that 35 votes were added upon the ground that said votes had been improperly rejected by the County Canvassers of the vote of said county at said election, and that six votes cast were deducted upon the ground that said votes were cast by non-residents of the county. It follows from the view we have taken of the law applicable to the powers and duties of the State Canvassers, that any statement of votes by precinct inspectors, which were not included in the canvass made by the County Canvassing Board, cannot be counted by the State Board, the powers of the latter being confined by law to counting only such

votes as are duly returned by the County Board. Such votes cannot be legally included in the estimates of the State Canvassing Board.

The question of jurisdiction raised in the pleadings, as well as the other questions of practice and power, are all adjudicated in the case of the State on the relation of Bloxham vs. The Board of State Canvassers, 13 Fla., 74, 5-6, and it is unnecessary to repeat here what is there said.

Under the pleadings, and the Constitution and statute as applied to them, our judgment is that the demurrer must be sustained and the peremptory writ must be awarded.

On the 22d day of December, after the reading of the foregoing opinion, the respondents, McLin and Cowgill, moved for leave to file an amended answer to the alternative writ, setting forth the character of the election returns as the same appear upon their faces; but on the next day this motion was withdrawn, and the judgment of the court sustaining the demurrer, and directing the issuance of the peremptory writ, was entered, as follows :

" This day came the parties by their attorneys, and thereupon the matters of law arising upon the relator's demurrer to the answers, original and amended, of the respondents, being argued, it seems to the court that the said answers and the matter therein contained, are not a sufficient answer in law to the alternative writ issued herein, and that said return is insufficient. Therefore it is considered that a peremptory writ be awarded directed to the said Samuel B. McLin, Secretary of State, Willam Archer Cocke, Attorney-General, and Clayton A. Cowgill, Comptroller, Board of Canvassers of Elections of the State of Florida, commanding them that they forthwith meet and convene and reassemble as a Board of State Canvassers in the office of the Secretary of State, to canvass and count all the election re-

turns on file in the said office of the Secretary of State of
the said election for the office of Governor, held on the 7th
day of November, A. D. 1876, and that as such Board of
State Canvassers they canvass and count the returns for
said office from each and every of the counties of this State,
wherein an election was held for said office, and, especially,
that they do canvass and count the said election returns
from the said counties of Jackson, Hamilton, Manatee, and
Monroe, and that they determine from a canvass and count
and examination and tabulation of all the votes cast for the
said office of Governor at said election in all the counties of
the State, as shown by the election returns of said election
received at the office of the Secretary of State, who has been
elected by the highest number of votes to the said office of
Governor as shown by the said returns, and that they do,
as such Board, make and sign a certificate, as required by
law, containing in words and figures written at full length,
the whole number of votes given at said election as shown
by said returns for the said office of Governor of the State
of Florida, and the number of votes given for each person
voted for for said office, and in said certificate declare the
result of the said election for Governor of the said State.

"And that they do perfectly execute this writ on or before
the 27th day of December, A. D. 1876, and how they shall
have executed it make return to our Supreme Court on
that day by four o'clock P. M. in writing, to be filed in the
Clerk's office of said court."

The peremptory writ was issued pursuant to the judg-
ment of the court, and served upon the respondents.

On the 27th day of December, at 1.30 P. M., the Attor-
ney-General filed a paper purporting to be an answer to the
peremptory writ, in which he states that on the 25th of
December he made application to the Secretary of State,
McLin, to know upon what day he would convene the

Board of State Canvassers to execute the judgment of the court, and that he replied, "Not to-day, Christmas being a holiday; to-morrow you will be notified." That on the 26th he received a notice from the said Secretary of State to meet with him and the Comptroller on the 27th, at *eleven o'clock A. M.*, for the purpose of making the re-canvass as ordered by the court; but that on the 27th, before the hour of *eleven A. M.*, he received another notice from him withdrawing the former, and that thereupon he requested of the Secretary of State and obtained immediate access to the election returns; that he made a canvass of the same, the result of which he gives as follows: The whole number of votes cast for the office of Governor 48,732; and that of these Geo. F. Drew received 24,613, M. L. Stearns 24,116, D. S. Walker 1, and W. L. Hutchings 1, and one blank. In this answer he also reports having made a canvass of the votes cast for Lieutenant-Governor, and gives the result of the same, and appends to the answer a tabulated statement of the number of votes cast in each of the several counties for the office of Governor and Lieutenant-Governor.

On the same day, at four o'clock P. M., the Secretary of State, McLin, who was chairman of the Board, reported to the Court, in writing, that the Board had organized for the purpose of re-canvassing the votes for Governor in obedience to the order of the court, and was engaged in making the canvass, and would report to the court at the earliest practicable moment.

On the 28th of December, the Secretary of State, McLin, and the Comptroller, Cowgill, made a return to the peremptory writ, the same consisting of a certificate under section 4 of the statute heretofore set out, and which is more fully explained in the opinion of the court following hereafter, giving the whole number of votes cast at the election and given for each office, and for each person for each office, and members of the Legislature, and of the following paper pur-

porting to be both a protest and return of the result of a canvass of votes cast for Governor and Presidential Electors:

"The said Samuel B. McLin, William A. Cocke and Clayton A. Cowgill, members of the Board of Canvassers of the State of Florida, acknowledging service upon them in due form of the writ of mandamus issued by order of the Supreme Court, in the above entitled proceeding, and taking cognizance of the orders therein, both general and special, and particularly the requirement making report of the action of said Board, under the said writ, due to the said court at the hour of four o'clock P. M., of December 27, beg leave respectfully to make return to the court in discharge of its orders in the premises, and also of said writ, requesting that this, their return, may be accepted in discharge thereof.

*First.* They respectfully, but as of right, enter their protest against doing, and being required to do, any and all the things of them ordered by the said writ of the said Supreme Court; and in connection therewith they deny that the court could rightfully take jurisdiction of the said proceeding and assume to issue said writ against them, because they say the election, the returns of which they are directed now to re-canvass, was a mixed election, being partly for officers of the State of Florida and partly for Representatives in Congress, of which election they say they were officers within the meaning of Section 5515 of the Revised Statutes of the United States; and being such officers, they say they were bound to observe every duty by the law of Florida imposed upon them in regard to such election, subject to the pains and penalties, by the said section prescribed, for neglect or refusal to perform such duties. And as they were not at liberty, under the said election law of Florida to separate the returns for Representatives in Congress from the returns for State officers, for purposes of canvass and count, neither can the court make order requiring them to canvass said returns separately and by different rules.

They further say in protest that as such Board of Canvassers they did heretofore, to-wit: on the day of the 6th instant, assemble, and, as in their judgment, they thought required by the law of Florida, section 4 of the act approved February 27, 1872, canvass the returns of the election held November 7, 1876, being the same returns they are now by the court ordered and required to re-canvass; that in such former canvass some of the said returns were contested for alleged irregularity, falsity and fraud, in which case proof was heard by the Board to ascertain, if possible, the true vote cast for the several candidates in the counties or precincts of counties so contested, with result that in some instances the aggregate of votes as it appeared on the face of some of the returns was changed by the Board to correspond with the aggregate of the true vote, as the same appeared by the evidence, while in other cases the returns were entirely rejected, and that, in conclusion of the inquiry, the majority of the Board did determine and declare, as to them appeared right, just and lawful, that the candidates for Governor received votes as follows:

Marcellus L. Stearns received 23,666 votes;

George F. Drew received 23,208 votes.

And that the candidates for Lieutenant-Governor received as follows:

David Montgomery received 23,578 votes;

Noble A. Hull received 23,273 votes.

And that the candidates for Congress received as follows:

William J. Purman received 12,356 votes;

R. H. M. Davidson received 12,061 votes;

Horatio Bisbee, Jr., received 11,289 votes;

Jesse J. Finley received 11,148 votes.

And that the candidates for Presidential Electors received as follows:

Frederick C. Humphreys received 23,849 votes;

Charles H. Pearce received 23,844 votes;

Thomas W. Long received 23,843 votes;

William H. Holden received 23,848 votes;

James E. Yonge received 22,923 votes;

Wilkinson Call received 22,919 votes;

Robert B. Hilton received 22,921 votes;

Robert Bullock received 22,919.

And ·that candidates for other offices involved in the said election, each received the number of votes set opposite his name, the same being considered his true vote, all which will more fully appear by reference to the certified declaration of result on file in the office of the Secretary of State, whereupon the said Board did, by resolution passed, adjourn their session *sine die*, and cease to have legal existence, insomuch that it is not possible for any court to reassemble them or revive their functions for any purpose whatever.

Wherefore, in nowise abating our respect for the court, we declare of the re-canvass now hereinbelow returned to the court, made in conformity to the rules laid down for such re-canvass in the decision promulgated by the Court in the above entitled cause, and, on account of such rules, attaining another and different result from the first, and in our judgment, only lawful canvass, that we regard it as a return void of effect.

And we respectfully pray the Court that this protest may be admitted as part of such return, and become of the record of the Court.

And now, obediently to the order and writ aforesaid, the undersigned, having in the first place re-assembled as a Board of Canvassers of the State of Florida, proceeded to re-canvass the returns of the several counties of the election for Governor, taking for the purpose the returns now on file in the office of the Secretary of State; and they return the following as the determination and declaration of the result of such re-canvass, to-wit:

Of the candidates for Governor—

George F. Drew received 24,179 votes;

Marcellus L. Stearns received 23,984 votes.

And the undersigned make further return to the Court, and say that, though not ordered so to do by the Court, for various reasons they deemed it best to make, while re-assembled as a Board as aforesaid, a re-canvass of the said returns of the said election on file in the office of the Secretary of State of and concerning the election of other officers voted for at said election, for which the court is respectfully referred to the certificate of the result of the election herewith appended as part of this return.

And the undersigned further inform the court that we regard our former canvass of the returns of the election for electors for President and Vice-President of the United States, on file in the office of the Secretary of State, as conclusive; yet, in view of the decision of the Supreme Court we have re-examined the said returns and find that a re-canvass of them, according to the said decision, would show that of the candidates for said electors—

Frederick C. Humphreys received 24,215 votes;

Charles H. Pearce received 24,211 votes;

Thomas Long received 24,209 votes;

William H. Holden received 24,215 votes;

James E. Yonge received 24,004 votes;

Wilkinson Call received 24,001 votes;

Robert B. Hilton received 24,001 votes;

Robert Bullock received 24,001 votes;

All of which is respectfully submitted.

SAM. B. McLIN,
*Secretary of State and Chairman Board of State Canvassers,*
C. A. COWGILL,
*Comptroller of Public Accounts."*

On the same day the Attorney-General filed the follow-

ing protest against said return of thē Secretary of State and Comptroller :

*To the Supreme Court of the State of Florida :*

I ask permission of the court to file this my protest against the return of S. B. McLin and C. A. Cowgill, members of the Board of State Canvassers, in the above stated case:

1st. I protest against the return signed by the judge, &c., from Baker county, because the Board has knowledge that it does not give the true vote, and is therefore false and fraudulent.

2d. I protest against throwing out the return from Clay county, because it is in all respects regular on its face. The fact that it omitted the vote at one precinct, and referred the question of counting the vote of said precinct to the Board, is no ground for throwing out the whole vote of the county, and is in direct opposition to the decision of the Supreme Court.                    WM. ARCHER COCKE,

*Attorney-General.*

Upon the filing of such return of the Secretary of State, McLin, and Comptroller Cowgill, the relator moved to strike out from the same all from the word "*First*," on page 55, down to and including the words "record of the court," on page 57 ; and this motion was argued by

*Mr. R. B. Hilton* and *Geo. P. Raney* for the relator, and *Mr. J. P. C. Emmons* for respondents, McLin and Cowgill.

And afterwards, on the first day of January, A. D. 1877,

MR. JUSTICE WESTCOTT delivered the opinion of the court.

We propose not only to dispose of the motion in this case made and submitted this morning, but also to announce our views in reference to the whole subject matter of what is called a return to the peremptory writ in this cause.

The first and only general question involved in this whole matter is, what is in form and substance the legal and proper paper to be filed by a respondent in response to a peremptory writ of mandamus?

The second question is, have the respondents complied with the law in this respect?

The third question is, in case they have or have not complied with the law, what is the proper order to be made by the court in this behalf?

To the first question, what is the legal and proper paper to be filed by a respondent in response to a peremptory writ of mandamus? Upon this question there is no conflict in the authorities. "There is strictly no *return* to a peremptory writ. It is to be obeyed, and a certificate is made of what has been done." This is the language of Mr. Justice Woodward, in delivering the opinion of the Supreme Court of Iowa, (9 Iowa, 335,) and such is the view announced by all the courts, English and American, so far as the cases decided by them upon the subject, have been examined by us. (Tapp. on Man., 61, 389, 445, and 456.) The granting "a peremptory writ implies that the party has been fully heard, and therefore he can allege no reason why he has not obeyed it." Such is the language of Mr. Chief-Justice Ruffin, of the Supreme Court of North Carolina, in the case of The State vs. Robert Jones, *et al.*, 1 Ired., 414. If such be the necessary inference, and in this case such inference corresponds with the fact, for the parties have been fully heard, then the pleadings, so far as the propriety of granting the writ is concerned, and as to matters of defense to the action proper, are closed, and the necessary result is that no such matter can be considered or be made the subject matter of any response to this peremptory writ. We have to apply these plain simple principles of law to what here purports to be a response to the peremptory writ. The first paper which we have on file connected with what

purports to be a "return" to the writ, is the certificate which constitutes the evidence and statement of a canvass made by the Board of State Canvassers of votes cast at a general election held in this State on the seventh of November, A. D. 1876. The statute regulating this subject provides that the Board shall make and sign a certificate containing in words written at full length the whole number of votes given for each person for each office, and for members of the Legislature, and therein declare the result, which certificate shall be recorded in the office of the Secretary of State in a book to be kept for that purpose, and the Secretary of State shall cause a certified copy of such certificate to be published once in one or more newspapers printed at the seat of government. The proper and only legal place of deposit of this original certificate, constituting the evidence of important action by State authorities, is the office of the Secretary of State. It is, under the statute, the basis of important official action which the law imposes upon him, and it should be upon the files of his office as evidence of the fact that the certificate recorded and published by him is a correct copy of the original, and that his duty in this respect has been properly discharged. As to this paper, therefore, it is improperly and illegally on the files of this court. Under the statute it has its proper place, and to that place it is as much the plain duty of this court to send it as it is the manifest duty of this officer to receive and file it. Therefore it is the order of the court that the Clerk of this Court deliver this paper to the Secretary of State of the State of Florida. And the Clerk of this court is directed to transmit to said officer at the same time a certified copy of so much of this opinion as refers to the proper place of deposit of this certificate.

The second paper on file connected with what purports to be a "return" is what is called the "protest" of the respondents, Cowgill and McLin. This court is not and

should not be offended at the filing of any respectful and proper protest to any or all of its action at the proper time and under circumstances which authorize such action. Such protest will always, when so filed, receive that respectful and calm consideration which it is the right of every man to have at the hands of a judicial tribunal. In this case the matter of jurisdiction which this "protest" proposes again to raise was made the subject of defense by the repondents, Cowgill and McLin. We have heard them fully. We have determined that we have jurisdiction. It is our duty to enforce it. It is the duty of the respondents to obey. Under the circumstances of this case, and as a response setting up matters of defense as to which these parties have been already heard, it is not proper here. We cannot hear further argument as to this matter. We cannot act as though the pleadings proper in this cause are now open to amendment. The pleadings are closed, and the simple duty of the respondents is to obey the writ and to make a certificate of their obedience. Again, this paper, like the first paper we have considered, purports to set up a canvass of votes cast for other persons and officers than George F. Drew, Marcellus L. Stearns and other persons *for Governor*. The only relator in this case is George F. Drew. All of the other persons mentioned in these papers as receiving votes for various offices, and who are declared elected to such offices, are in no manner parties to this controversy. As a judicial tribunal we should take no action which can directly affect their rights or approve any action by the Board of Canvassers affecting their rights, except according to the law of the land, which is after notice, hearing and trial. In a pleading in equity this would be impertinent and irrelevant matter. In a common law proceeding it is surplusage to be quashed and set aside upon motion. It is therefore ordered that the same be set aside and quashed as surplusage, having no connection with any proper response to the peremptory writ.

This court is not a Board of Canvassers. If the Board see proper to canvass the returns of votes with reference to offices other than that of Governor, in conformity to their duty as defined by this court, that is a matter as to which we can decide nothing. It is not here involved.

As to the separate answer of respondent, William Archer Cocke, Attorney-General of the State of Florida, it must be set aside and quashed. Its approval, like the approval of what purports to be a protest, would be approval by this court of action by the Board affecting others than the relator in this cause. This brings us to the consideration of the particular motion here made. It must be denied. This court cannot simply strike out that portion of the protest sought to be stricken out under this motion, thus leaving a large part of this paper which we have already stated must be quashed.

In determining this matter the court must be permitted to say that its decision here establishes in all future proceedings by mandamus what is in form and substance a proper response to a peremptory writ in this State. It becomes us to be careful, and that we do not prescribe a rule of practice which may hereafter be shown, as applied to the rights of this people, to be erroneous. The conclusion we reach is, that these respondents have made no response which this court can accept.

Their duty is plain and simple under this peremptory writ. It is to canvass, count, and add up returns of votes cast in the several counties in this State for the persons voted for for the office of Governor. This act involved writing to the extent of one or two pages, and we think the duty can be performed in two or three hours.

The order is that the " return " to the peremptory writ is quashed; that the paper purporting to be a certificate of a canvass of votes cast on the seventh of November A. D. 1876, at a general election in this State, be returned to the

office of the Secretary of State by the Clerk of this court; that what purports to be a protest, as well as the return, signed by William Archer Cocke, Attorney-General, be quashed; that an order be made repeating the peremptory writ, and directing a strict compliance with the order and direction of the court in this behalf; and that the respondents do perfectly execute the duty heretofore and hereby enjoined upon them by half-past five o'clock p. m. of this day.

After the filing of this opinion, the following order was entered:

The court having considered the motion of relator, and being advised of its opinion to be given in the premises, it is ordered that the motion of the relator to strike out certain portions of the paper called a "protest," filed herein by the respondents, be and the same is denied.

Ordered further, that the said paper called a "protest" be and the same is set aside and quashed as in no manner constituting a proper response to the peremptory writ; and as to the separate answer of the Attorney-General, it is ordered that the same be set aside and quashed.

It is further ordered, that the paper purporting to be a certificate of a canvass of votes given at a general election in this State, signed by the Board of State Canvassers, be returned by the clerk to the office of the Secretary of State, together with a copy of so much of the opinion of this court herein as relates to the proper place of deposit of said paper.

And it is further ordered, that the respondents strictly comply with the order and mandate of this court in this behalf, to-wit: That they canvass and count the returns for said office from each and every of the counties of this State, wherein an election was held for said office; and especially that they do canvass and count the said election returns from the said counties of Jackson, Hamilton, Manatee and

Monroe, and that they determine from a canvass and count and examination and tabulation of all the votes cast for the said office of Governor, at said election, in all the counties of the State, as shown by the election returns of said election received at the office of the Secretary of State, who has been elected by the highest number of votes to the said office of Governor as shown by the said returns; and that they do, as such Board, make and sign a certificate as required by law, containing in words and figures written at full length the whole number of votes given at said election, as shown by said returns, for the said office of Governor of the State of Florida, and the number of votes given for each person voted for for said office, and in said certificate declare the result of the said election for Governor of the said State; and that they do perfectly execute the duty herein and hereby enjoined by the hour of thirty minutes past five o'clock P. M. of this day.

And on the same day this order was duly served on the respondents, and they filed a return to the peremptory writ, stating that in pursuance to said writ they had proceeded to re-canvass, according to the face of the returns as made by the county canvassers, the votes cast at the election held on the 7th of November, 1876, for Governor of Florida. In this return there is given a detailed statement of the number of votes cast in each separate county for the office of Governor, and for each person for such office, except the county of Clay, the returns from which the Board rejected, " because on their face they appeared to be false and only represented a part of the votes actually cast for Governor in that county." This return also states as the result of the canvass that the whole number of votes cast in the State for Governor was 48,166, and that of these M. L. Stearns received 23,984 and George F. Drew 24,179, D. S. Walker 1, Irander Trearson 1, and William Hutchins 1, and concludes

by certifying and declaring that George F. Drew was elected Governor of Florida. Attorney-General Cocke appended a note to this return stating that he differed from the majority of the Board as to rejecting the Clay county return, and as to which was the legal return from Baker county.

On the 2d day of January, 1877, the respondents filed an amendment to the above return, stating that they had filed in the Secretary of State's office a certificate under said Section 4 of Chapter 1868, Laws of Florida, containing in words written at full length the whole number of votes given for the office of Governor on the 7th day of November, 1876, as appears by such re-canvass of votes.

The court thereupon made the following order, striking out the detailed statement of the votes cast in the several counties from said return, so as to make the same conform to the views of the court:

And now, on reading and filing the certificate of the respondents under date of January 1, 1877, and the additional certificate of the respondents filed this day, and the relator not objecting, it is considered by the court that the said respondents have substantially complied with the mandate of this court in this behalf. But, because the respondents have incorporated in their said certificate a detailed statement of votes cast in the several counties at the late election, which said detailed statement was not required by the order of this court, and with which this court in this proceeding has no concern, and in the making and incorporating such statement in their said certificate the said respondents have unnecessarily encumbered the records of this court with matter not pertinent or material, it is therefore ordered by the court, of its own motion, that all such detailed statement be and the same is hereby quashed and struck out, leaving and saving the rest and residue of said response to stand as a

substantial compliance with the requirements of the law as to the matter before this court.

It is further considered and adjudged that the respondents, Samuel B. McLin and Clayton A. Cowgill, pay the costs of this proceeding.