OF THE

# Supreme Court of Florida,

AT A

## SPECIAL TERM

CONVENED NOVEMBER 16, A. D. 1878.

STATE OF FLORIDA EX REL. H. BISBEE, JR., VS. THE BOARD OF COUNTY CANVASSERS OF ALACHUA COUNTY.

1. It is not a valid objection to the jurisdiction of State courts in mandamus proceedings, relating to the canvass of election returns, that the office affected is that of Representative in Congress.

2. A return by election inspectors, in which the votes cast for a person are given twice or repeated, constitutes no ground for refusing to include such return in the statement or certificate by the county canvassers, it being on its face a mere verbal repetition, and not an attempt to misstate the votes cast. The fact that the statement sent to the Clerk contained such repetition, while that sent to the County Judge did not contain it, does not create such a variance between them as to authorize their rejection.

3. When the jurat to the oath of inspectors of election is not signed, or when the inspectors have not been sworn, but have acted as such and made proper returns, their acts are valid and their return of election should be counted.

4. A statement in the caption of inspectors' returns forwarded to the Judge that the election was held under an act of 1868 and the amendments thereto, (without giving the dates of the amendments,) while that sent to the Clerk gave the date of the act and also the amendments, does not render the returns indefinite, uncertain, contradictory, or, in any sense, repugnant to each other, but they are regular and conformable to law. The difference is immaterial.

5. County canvassers cannot look beyond the inspectors' returns except to determine their genuineness as being signed by inspectors appointed or elected as such of the precinct. Ballots found in a ballot-box cannot be considered by the county canvassers.

6. Where the County Judge and Clerk have called in a Justice of the Peace, who acts with them in canvassing election returns, the Justice becomes a member of the board of county canvassers, and is, like the other members, amenable to the writ of mandamus to control or correct their action.

7. A certificate showing in general terms a performance of the several specific acts commanded to be done by a peremptory mandamus is the proper response to such a writ.

The relator, on the 16th day of November, A. D. 1878, filed a petition stating that on the 5th day of that month a general election was held in the several counties of the State for Representatives in the Forty-Sixth Congress of the United States, and at such election he was one of the candidates for Representative from the Second Congressional District, and that Noble A. Hull was the only other candidate therefor, and they were the only candidates voted for for such representative at such election. It further states that J. A. Carlisle, Clerk of the Circuit Court, J. C. Gardner, County Judge, and E. A. Castellaw, a Justice of the Peace of Alachua county, organized on the 11th day of November as the Board of County Canvassers to canvass the precinct returns; that among the voting precincts or districts in the county were three, known respectively as "Arredondo," "Dudley's Store" and "Gainesville" precincts or districts; that good and intelligible returns of the result of the election in these districts or precincts had been duly made by the inspectors and delivered to the Clerk and County Judge as required by law, and that they were opened and read by said Board of County Canvassers on the 11th day of November aforesaid. It further states that it distinctly and clearly appears from the "Arredondo returns" that the relator, H. Bisbee, Jr., received at that precinct 225 votes, and Noble A. Hull received 66 votes, and from "Dudley's Store returns" that relator received at that precinct 278 votes, and Noble A. Hull 57 votes, and from the "Gainesville returns" that the relator received 324 votes, and Noble A. Hull 234, but that said Board of County Canvassers had refused and omitted to canvass said returns from these election districts and to include the votes specified therein in their certificate of the result of the election in said county. The petition also alleges that these returns were respectively duly signed by the inspectors of said precincts, and that the number of votes each candidate received is clearly and distinctly set forth without any uncertainty, but admits that in one of the duplicate returns from the Arredondo precinct the words "J. J. Arnow received three hundred and fifty-eight votes" are repeated, (Arnow was a candidate for member of the Assembly,) and says that this was the only objection raised to the returns by any member of the Board or other person. The petition further alleges that by excluding the votes aforesaid from the total vote cast and returned in the said Congressional District for such candidates for Representative in Congress, Noble A. Hull would have a majority, whereas by including and counting the same, the relator would have a majority, and be elected as such Representative. The petition prayed that the alternative writ should issue, and, in accordance with the prayer thereof, the writ issued, reciting the facts stated in the petition, and commanding the said J. C. Gardner, County Judge, J. A. Carlisle, Clerk of the Circuit Court, and E. A. Castellaw, Justice of the Peace, to convene and reassemble as the Board of County Canvassers of Alachua county and to count and canvass all the returns on file in the office of such Judge and Clerk respectively, or which had been delivered to such Judge or Clerk respectively pursuant to law, of the said election, held on the fifth day of November, A. D. 1878, and as such County Canvassing Board to publicly canvass and count the election returns from each and every election district or precinct in the county of Alachua, wherein an election was held for the said office, and especially to count and canvass the election returns from the precincts or districts known in said county as Arredondo, Dudley's Store and Gainesville precincts or districts, and to canvass and count solely and entirely from the election returns of the precinct inspectors from all of the election districts or precincts in said county, as filed by such inspectors with the County Judge and Clerk of the Circuit Court respectively, and in no case to change or vary in any manner the number of votes cast for the candidates respectively at any of the polling places or precincts in the said county, as shown by the returns of the inspectors of such polling places, filed or delivered by them to such Judge and Clerk, and to forthwith compile the result of the election as shown by said inspectors' returns, and make and sign duplicate certificates, containing in words and figures written at full length, the whole number of votes given for such office, the names of the persons for whom such votes were given for such office, and to forthwith transmit by mail one of such duplicate certificates to the Secretary of State and the other to the Governor of the State of Florida, or to show cause why they have not done so before the Supreme Court, at the Capitol, in Tallahassee, at 10 o'clock, A. M., on the 20th day of November, A. D. 1878.

The 20th day of November the County Judge and Clerk of the Circuit Court filed an answer to the alternative writ. The defenses set up in it are stated in the opinion of the court.

To this answer the relator demurred as being insufficient in law.

The Justice of the Peace did not appear or plead to the alternative writ, nor was it served on him; but he was served with a copy of the petition on November 14, and notified in writing at the same time that application would be made to the court for the writ to issue on the 16th of November.

As to the question of the repetition in the "Arredondo return" sent to the Clerk, which repetition does not appear in that sent to the County Judge, the statute requires duplicate returns to be made out by the inspectors, and one sent to the Clerk of the Circuit Court and the other to the County Judge. Chap. 3021, sec. 8.

As to the question of the absence of the jurat from the inspectors' oaths in the "Dudley Store precinct" returns, the statute provides that the inspectors shall, previous to receiving any votes, take and subscribe an oath or affirmation in writing, that they will perform the duties of inspector of election according to law, and will endeavor to prevent all fraud, deceit or abuse in conducting the same, and that the oaths of the inspectors shall be returned with the poll lists and returns of election to the Clerk of the Circuit Court to be filed in his office. Sec. 11, chap. 1625, and sec. 8, chap. 3021.

As to the point stated in the opinion of the court as having been suggested by counsel, that the County Judge and the Clerk being the only officers expressly designated to be mmbers of the Board, and that a Justice of the Peace must be called by them to be the third member, and that therefore the writ cannot go against the justice, as no individual justice is designated by the law, the statute (Sec. 9, chap. 3021,) provides that "on the sixth day after any election, or sooner, if the returns shall have been received, it shall be the duty of the County Judge and Clerk of the Circuit Court to meet at the office of said Clerk, and to take to their assistance a Justice of the Peace of the county; and in case of the absence, sickness or refusal to act, or other disability of the County Judge or Clerk, the Sheriff shall act in his place, who shall constitute the County Canvassing Board."

*H. Bisbee, Jr., in pro. per.*

*James M. Baker* for Respondents.

THE CHIEF JUSTICE delivered the opinion of the court..

The respondents, Gardner, County Judge, and Carlisle, Clerk of the Circuit Court, make answer to the writ.

And first, they protest that this court has no jurisdiction to award this writ in this case, because the particular office for which the relator seeks to compel the canvass of returns is that of Representative in Congress.

It is not pretended by the relator that the canvassing of the votes determines his right to this office. That must be determined by the House of Representatives. But the relator says that the law of the State, under which the election was held, entitles him, if he shall appear to have a majority of the votes according to the election returns, to a certificate of that fact, and also that as a citizen of the State he has an interest entitling him to demand that the officers of election shall obey the law, which he alleges has been broken.

If he is entitled to a certificate of election from the officers of the State, according to the laws of the State, the courts of the State have power to aid him in procuring that certificate, and if proper returns of the election are withheld so that he is thereby deprived of this *prima facie* right, he may rightfully demand the aid of the courts to enforce this right. This power of the State courts was suc-

cessfully invoked in the cases of The State vs. Garesche *et al.*, (65 Mo., 480,) and The State *ex rel.* McDill, (36 Wis., 498.) See also 53 N. H., 473.

The relator does not claim any right by virtue of this proceeding, arising under the Constitution or Laws of the Uinted States, but only under the laws of the State, which provide the manner of conducting the election. These laws must be enforced by the tribunals of the State. We cannot conceive that there is any doubt of the jurisdiction of the State courts to enforce them, on the ground that the office affected by the proceeding is that of a representative of the people of the State in the National Congress.

The respondents say that they refused to canvass and include in the statement of the result of the election (which the law requires to be made and transmitted to the Governor and Secretary of State,) the returns of the inspectors in the Arredondo precinct, because the return forwarded by the inspectors to the Clerk contained a repetition of the statement, that for member of the Assembly G. J. Arnow received two hundred and fifty-eight votes; in other words, the number of votes for G. J. Arnow was written twice in that statement, and that the return transmitted to the County Judge contained the same statement of the votes for G. J. Arnow for member of the Assembly but once, or without the repetition, and therefore the two returns did not agree, and did not clearly set forth the number of votes for G. J. Arnow for member of Assembly.

We cannot discover that there is any difficulty in ascertaining from the returns, (the originals of which are presented for the inspection of the court,) the number of votes cast for G. J. Arnow by reason of the evidently clerical blunder. The other return did not contain the blunder, and it was thus manifest that it was a mere verbal repetition of words, neither increasing nor diminishing the aggregate vote, but plainly apparent and producing no confusion whatever. The reason alleged is not a valid excuse for refusing to include the votes stated in the return in the aggregate canvass.

As a reason for omitting to include the votes cast at the Dudley Store precinct, the respondents say that the inspectors returned to the Clerk the form of the oath provided for them, signed by them, but the jurat was not signed by an officer, and therefore there was no evidence that the members of the Board were sworn as provided by law. The return is otherwise regular. The inspectors are public agents authorized to conduct the election and to certify the result. Like other official persons, having acted in a public official capacity, they occupy the position of officers *de facto*, even though they failed to return the oath duly taken.

It is entirely settled that the acts of *de facto* officials are valid as to the effect upon the public, though they may not be able to protect themselves in reference to their action. In The People vs. Cook, (14 Barb., 259, and 4 Selden, S. C., 67,) and State of Iowa *ex rel.* Rice vs. County Judge of Marshall, (7 Iowa, 186, 200,) it is held that the omission of inspectors of election to take the oath prescribed by statute will not invalidate an election held by them. In the case cited in 7 Iowa, the court remarks that the rejection of the returns from three townships, because they did not show that the officers were sworn, was not within the province of the county canvassers, and was an error. Even the court did not determine upon the sufficiency of the returns, it only decided that it was the duty of the canvassers to count them, leaving the question of law to a competent tribunal, when the case should be properly presented. See also 29 Ill., 413. A board of county canvassers is not authorized by any law thus to decide upon the official title of

the inspectors of election. This reason for the rejection of the Dudley's Store returns is also invalid.

As to the returns of the election held at the Gainesville precinct, the respondents answer that they refused to canvass and include said returns because the respective returns of said precinct received by the County Judge and the Clerk were not duplicates, in that one of them was a "return of an election held under an act to provide for the registration of electors and the holding of elections, approved August 6, 1868, and the acts amendatory thereof," and that the other was a return of an election held under "an act to provide for the registration of electors and the holding of elections, approved August 6, 1868, and the acts amendatory thereto approved February 7, 1872, and February 27, 1877," from which the respondents say they decided "that no election had been held at Gainsville precinct under the existing laws of the State of Florida; that the paper writings were indefinite, uncertain, contradictory, and, in the material matters aforesaid, utterly repugnant to each other."

We will only say in reference to this return, that our conclusion is directly the opposite; that it shows that an election was held, as it states in direct terms that it was held under existing laws of the State of Florida, and the paper writings were not indefinite, uncertain, contradictory, or in any sense repugnant to each other. The returns were regular, conformable to law, and corresponded each with the other in every material part and word, except that one contained the votes cast for constable while the other did not. Both stated the same facts from the beginning to the end, except as to constables, and the votes should be canvassed and included in the returns to be made to the proper State authorities.

In reference to the returns from the precinct called the Arredondo precinct, the respondents say that in order to ascertain the true vote from the precinct, they opened the poll box, and instead of verifying either of the returns by examining the ballots therein found, (which was the alleged purpose of examining the contents of the box,) they found certain figures or numbers on the back of a large number of the ballots, which numbers corresponded with certain numbers marked against names of persons on the poll list. For this reason the respondents determined that these marked ballots were not lawful ballots.

The county canvassers could not lawfully look beyond the face of the returns in ascertaining votes cast for candidates. The statute (Act of 1877, sec. 9, amending section 24 of the act of Aug. 6, 1868,) expressly says of the duty of the county canvassers, "such canvass shall be made solely and entirely from the returns of the precinct inspectors in each election district, as filed by them with the County Judge and Clerk of the Circuit Court respectively, and in no case shall the Board of County Canvassers change or vary in any manner the number of votes cast for the candidates respectively at any of the polling places or precincts in the county, as shown by the returns of the inspectors of such polling places or precincts."

The county canvassers have only to determine whether the paper is a return or certificate signd by the inspectors, and then, if it is possible to ascertain the number of votes cast for each person for each office voted for, compile the figures from the several returns and certify the aggregate to the proper officers whose duty it is to receive and canvass the county returns. This plain duty is set forth in the law too clearly to be misunderstood by county officers. This rule has been observed in every case where this question has come before the courts of the various States upon similar statutes. The county board has no judicial discretion, and no power savoring of judicial judgment beyond ascertaining that the returns are signed by the persons appointed

or elected, as provided by law, to be inspectors of the polling places, a power incident to their office in the performance of their ministerial functions.

Counsel for respondents suggests that the county judge and the clerk, being the only officers expressly designated to be members of the canvassing board, (except that the sheriff shall act in the place of either of them who may be absent, &c.,) and that a Justice of the Peace shall be called in by them to be a third member of the board, and that, therefore, the writ of mandamus cannot go against the justice, as no individual justice is designated by the law.

There are some adjudications in which the writ was allowed as to the officers designated, to-wit: the judge and clerk with directions to call in a justice. But here the judge and clerk have appointed a justice of the peace to act as the third member of the board, to-wit: Edwin A. Castellaw, and these three officers met and organized themselves into a canvassing board for the county of Alachua, and entered upon their duties and canvassed a portion of the returns, but have omitted fully to perform their duties under the law.

In the State of Iowa, *ex rel.* Rice, 9 Iowa, 344, the court says: "The order of the peremptory writ extends to the justices as well as to the county judge, in its legal effect. If it were not so they might defeat the object intended, and so it would be in this case. The judge with the justices, as canvassers, must do what is commanded by the writ. Therefore, the writ of attachment should have issued against the justices as well as the judge. The only discretion now left them is to compute the vote for the respective places."

In the present case, Mr. Castellaw, having become according to law a member of the board of canvassers, he is as fully a member and amenable to this proceeding as the other officers who are members of the board under the same statute.

Mr. Castellaw, the Justice of the Peace, was not served with the alternative writ, the sheriff not being able to find him. But he was served with due notice of the application to this court in the first instance, and has failed to respond. The notice was served by a person, not an officer, who makes his affidavit of the service of a copy of the petition for mandamus as well as notice of the time and place of its presentation to this court. This is sufficient. The notice served gave him every opportunity of defence that could have been obtained by an alternative mandamus. Board of Commissioners of Knox county, vs. Aspinwall, 24 How. 376; People vs. Pearson, 1 Scammon, 458; Home Insurance Company vs. Schiffer, 12 Minn., 382; *ex parte* Rogers, 5 Cowen, 526.

The demurrer of the relator is sustained.

A peremptory writ is awarded against the respondents, Gardner, County Judge, Carlisle, Clerk of the Circuit Court, and Edwin A. Castellaw, Justice of the Peace, of the county of Alachua, as prayed, commanding them to proceed, and canvass all the returns of the election received from the several precincts or polling places in Alachua county, and make returns or certificates of the result of said election, in said county, as shown by all of said returns, to the Secretary of State, and to the Governor of the State of Florida, and that they do perfectly execute said writ of mandamus; and how they shall have executed it, make return to this court on or before the twenty-sixth day of November, A. D. 1878, at 10 o'clock A. M., to be filed in the office of the Clerk of this Court.

The peremptory writ issued pursuant to the judgment of the court, requiring performance to be made before or on the 26th day of November, 1878; and a return of per-

formance to be filed in the office of the Clerk of the Supreme Court on the same day.

The respondents filed in the Clerk's office of the Supreme Court a return in the shape of a certificate, stating that *on the 25th day of November,* in compliance with the command of the writ, they reassembled and canvassed the votes given at the election; and that from the returns on file in the office of the Clerk of the Circuit Court the whole number of votes cast for Representative in Congress was 2,923; and that of these Noble A. Hull received 1,178 votes; Horatio Bisbee received 735 votes; Horatio Bisbee, Jr., 751 votes; Horatio Bisby, Jr., 68 votes; Horache Bisbee received 191 votes. The return also states the number of votes cast for members of the Assembly and Constables, and who received them, and then concludes as follows: "While we make this canvass under the order of the court, we certify that the precinct returns are so irregular, false and fraudulent that we are unable to determine what the true vote of Alachua county is for Representative in Congress and for members of the Assembly."

This return, while failing to comply with the rule laid down in the case of The State *ex rel.* Drew vs. Board of State Canvassers, (16 Fla.,) which rule requires a mere statement of performance of the requirements of the writ, omits, in its recital of what had been done, to state whether or not the certificates declaring the whole number of votes given for each office, and the names of the persons voted for, and the number of votes given for each person, had been transmitted to the Governor and the Secretary of State, as required by the statute.

The relator then moved for a writ of attachment against the respondents, or for further order of the court, commanding them to obey the writ of mandamus, or show cause why they should not be attached for contempt.

The motion was argued by the relator, and afterwards, on the 2d day of December,

Mr. Justice Westcott delivered the opinion of the court.

Determining the sufficiency of this response by the rules announced in the case of Drew vs. The State Canvassers, (16 Fla., 60 and 61,) it is informal and insufficient.

There is here no allegation that the certificate required by the law and the writ, to be forwarded to the Governor and the Secretary of State, has been so forwarded; and the certificate returned is not a certificate of obedience to the writ strictly, but a certificate of a canvass made, concluding with the statement "that the precinct returns are so irregular, false and fraudulent that we are unable to determine what the true vote of Alachua county is for Representative in Congress and for members of the Assembly."

Anterior to the issuing of the peremptory writ in this case, this Board had canvassed the returns which were not the subject of this proceeding, and had failed to count returns which it was the purpose of this proceeding to cause them to count and return.

The granting of a peremptory mandamus implies that the party has been fully heard, or has had the opportunity for such hearing. Therefore it is, that he can allege no reason why he has not obeyed it. 1 Ibid., 416; 16 Fla., 60.

The allegation, therefore, in this return, as to irregularity of returns, is improper. Their duty under this writ is simply to canvass and add up the returns as ordered, and to make and forward the certificates required by law. A simple statement that all of the acts required to be performed by the peremptory writ have been performed, is all that is necessary.

The matter of a response in a mandamus proceeding is fully treated in the case of Drew vs. The Board of State

Canvassers, (16 Fla., 60,) and what is here said is but a repetition of the views there expressed.

If the statement or response is not true, then upon proper allegations and proofs, either a rule to show cause or an attachment for contempt will issue.

In this case the response does not show such compliance.

Let an order be issued repeating the mandate of the peremptory writ, and directing a strict compliance with the order and direction of the court in this behalf, and that the respondents do perfectly execute the duty heretofore and hereby enjoined upon them by ten o'clock of Thursday morning, the 5th day of December, A. D. 1878; and that a rule be issued, returnable at the same time, requiring the respondents to show cause why they should not be attached for contempt.

An order of the court repeating the command of the peremptory writ and requiring a strict and perfect performance by the respondents on or before December 5, 1878, of the duties so required of them, and that they make return on that day by ten o'clock A. M. in writing, and show cause why they should not be attached for contempt, was issued and served on respondents.

On the 5th day of December, the respondents made returns to this order. In one return they state that on the 4th day of December they reassembled in the office of the Clerk of the Circuit Court, and solely and entirely, from the face of the returns on file from the different precincts in the county, canvassed the votes cast at the election held on the 5th of November, 1878; and that they made a certificate in triplicate and forwarded one to the Governor of the State and one to the Secretary of State, and the other they enclosed with the returns to the court, and that they have omitted all matter indicated by the opinion of the court to be improper.

The triplicate certificate transmitted to the court and referred to in the above return, returned the votes just as they appeared upon the precinct returns for "Noble A. Hull," "Horatio Bisbee," "Horatio Bisbee, Jr.," "Horatio Bisby, Jr.," or "Horache Bisbee," and as they were returned in the former return of the canvass of November 25. No exception was taken to this by the relator.

The respondents also made a return showing cause why they should not be attached for contempt. It is substantially as follows:

"That they are not now, nor have they ever intended to be in contempt of your honorable court, but, on the contrary, have at all times felt a pride in common with the good citizens of their county, in the justices of said court for their purity of character and lofty attainments as jurists, and have always as citizens and as officers, and are now willing to cheerfully comply with all of its mandates, and as good citizens to humbly submit to the authority of those who rule over them.

"Feeling that they had complied fully and to the letter with the mandate of the court, in counting and canvassing *solely* and *entirely* from the election returns of the precinct inspectors, from all of the election districts in the county, as filed by the inspectors with the County Judge and Clerk of the Circuit Court, respectively, and in no case changed or varied in any manner the number of votes cast for candidates, respectively, at any of the polling places or precincts in the said county, as shown by the returns of the inspectors of such polling places, filed or delivered by them to such judge or clerk, and had faithfully and honestly compiled the result of the election as shown by the returns of the inspectors, and had made certificates in words and figures written at full length of the whole number of votes given for such office, the number of persons for whom such votes were given for such office. Seeing

that the consolidation of the returns of the inspectors presented such an *irregular, false* and *fraudulent* appearance, and being by the decision of your honorable court prohibited from examining the ballots, poll-lists, &c., (they by said decision not being a part of the return of the inspectors,) to sift, investigate and arrive at a conclusion for whom the *ballots* had been cast, came to the conclusion (before signing their names as canvassers) that they would insert the further certificate declared by the decision of your honorable court to be a violation of your mandate of a former date, simply as an *expression* of *opinion* and with no design whatever to change, alter, or confuse the result as made by their said canvass; that they in no manner meant or intended any contempt or disregard of the order of your honorable court."

Afterwards, on the same day, the court having considered the same,

Mr. Justice Westcott delivered the following opinion:

The respondents on this the 5th day of December, A. D. 1878, file an additional response to the peremptory writ herein issued, setting up a compliance with its mandate as to the returns of the election for Representative of the Second District of Florida, in the 46th Congress of the United States. With this is filed a certificate setting up the votes cast at said election for members of the Assembly of the State of Florida and other officers.

The proceedings in this cause concern only the votes cast for Representative in Congress. Matter not pertaining to this subject is surplusage and should be stricken out. 16 Fla., 62.

The court considers that the respondents have substantially complied with its mandate in this behalf.

The relator not objecting, the return is accepted as sufficient, and the rule to show cause why an attachment for contempt should not issue herein is discharged, the respondents to pay the costs of these proceedings.

Let a final judgment be entered accordingly.