H. C. MYERS, SECRETARY OF STATE, *v.* J. R. CHALMERS.

1. MANDAMUS. *Against Secretary of State. To compel new declaration of result of election. Candidate for Congress.*

Where the returns of an election for representative to Congress have been received by the Secretary of State, the votes summed up, and the result declared by him, and a commission has been issued by the Governor to the candidate whom the Secretary of the State has declared elected, the opposing candidate is not entitled to a *mandamus* to compel the Secretary of State to make another summing up of the votes, in which the petitioner shall be accredited with votes which the Secretary of State did not before credit him with, and to declare the petitioner for the writ elected. In such a state of case, the courts have no power to adjust the rights of the parties, and the candidate who considers himself aggrieved must seek redress by a contest in the manner prescribed by law.

2. SAME. *Issuance of writ after result of election declared by Secretary of State. Effect thereof. Statute construed.*

Sect. 141 of the Code of 1880 provides as follows: "The Secretary of State,

immediately after receiving the returns of any election, not longer than thirty days after such election, shall proceed to sum up the whole number of votes given for each candidate, and to ascertain the person or persons having the greatest number of votes for each office, and shall declare such person or persons to be duly elected, and thereupon all persons chosen to any office at such election shall be commissioned by the Governor." If, after the Secretary of State has declared the result of an election for a representative to Congress and the Governor has issued a commission to the person declared to be elected, as provided in the section above quoted, this court should award a *mandamus* to compel the Secretary of State to make a new summing up of the votes, and to declare a different result, the writ would be nugatory. The Secretary of State would have no power to issue a certificate of election to the petitioner at whose instance the writ issued; and if the Governor should voluntarily respect the action of the Secretary of State under the *mandamus*, and issue a certificate to the petitioner, there would be two persons holding credentials to one and the same office.

3. COMMISSION.   *Of representative to Congress.   How attacked.*
   Where, under the statute above set forth, a commission has been issued by the Governor to a person declared by the Secretary of State to be elected a representative to Congress, such commission must stand until vacated and annulled by the body to which it accredits such person as a representative.

APPEAL from the Circuit Court of Hinds County.

Hon. T. J. WHARTON, Judge.

The case is sufficiently stated in the opinion of the court.

*L. Brame*, for the appellant.

1. Under our law and in view of the provisions of the statutes of this State, no matter what is held in other States, we assert that the court below had no jurisdiction of this case. We cannot presume to be wiser than the law. The highest evidence of what the law is we have been accustomed to believe is the solemn declarations of this court. In the case of *Oglesby* v. *Sigman*, 58 Miss. 502, which was an action of *mandamus*, this court said: "The House of Representatives of the Congress of the United States is the judge of the election returns and qualifications of its own members, and the courts of the State have nothing to do with this matter." Now, it cannot be said that this is *obiter*. The case went off on the point as to jurisdiction, and the power of the court to compel the Election Commissioners to take further action. What was said about the description and character of

ballots used was unnecessary, as the opinion states. But on the other point the decision is an authoritative declaration of the law ; and if the decisions of our highest judicial tribunal are not to be treated as child's play, we might conclude the argument right here. In the case of *Bisbee* v. *Canvassers*, 17 Fla. 9, the Florida court held that jurisdiction existed in such cases. It does not appear that the question was argued by counsel. The court cites *The State* v. *Garesché*, 65 Mo. 480 ; *The State* v. *McDill*, 36 Wis. 498, and 53 N. H. 473. In neither of these cases was the question raised or argued. If we are wrong in assuming that the court is without jurisdiction in all such cases, we cannot be mistaken in saying that the courts of the State cannot interfere after the certificate is issued and the Governor has given a commission in accordance therewith. The learning and research of opposite counsel, industrious as they have been, have not enabled them to cite a single decision of any court or precedent of any character to sustain the position that the officer or canvassing board can be compelled to act again after they have assumed to discharge their functions and a certificate of election or commission has been issued, no matter how erroneous the decision has been which leads to the issuance of the commission. We are speaking now of credentials issued to members of Congress elect. *The People* v. *Hilliard*, 29 Ill., and other cases cited by counsel, were decisions in relation to State officers. Sect. 31 of the United States Revised Statutes requires the name of the person who receives the certificate or commission to be placed on the roll of the House of Representatives, and he has the *prima facie* right to the seat in Congress. Sect. 105, *et seq.*, provides the manner in which a contest may be made, in elaboration of detail giving the mode of procedure. The person holding the commission is considered the lawful member and the contest proceeds under the Federal statute upon this assumption, the burden of proof being on the contestant. No law of Mississippi provides for or authorizes a retrial of the question in any such case whether or not the commission

has been lawfully issued. "Generally it will suffice to say that the writ (*mandamus*) does not lie to convassers of elections to compel them to canvass the returns after they have once performed this duty and the matter has passed beyond their jurisdiction, even though they have erred in rejecting votes which they should have received." High on Extr. Rem., sect, 57. "In proceedings by *mandamus* involving collaterally the rights of contesting claimants to an office, the court will not review the decision of a board of canvassers, for the reason that such decision is to be treated as conclusive, except in proceedings by *quo warranto* " (or contest). McCrary on Elect., sect. 333 ; *Ibid.*, sect. 221. To the same effect see *Bailey* v. *Supervisors*, 12 Barb. 217 ; *Magee* v. *Supervisors*, 10 Cal. 376. In the case of *O'Hara* v. *Powell*, 80 N. C. 103, which was a proceeding by *mandamus* in relation to a congressional election, cited and relied on by opposite counsel, the very principle for which we contend is recognized and applied. In that case the Board of. Canvassers had acted upon the returns and issued a commission to the rival candidate for Congress after the suit was instituted, and the court dismissed the proceedings and refused the writ of *mandamus* on the ground that the matter had gone beyond the jurisdiction of the court, and that the issuance of the writ would be unavailing. The same principle was announced by the Florida court, which is relied on by counsel to overrule *Oglesby* v. *Sigman*. See *Bisbee* v. *Inspectors*, 17 Fla. 26.

2. *Mandamus* should always be refused where the writ must ultimately fail. Tapping on Man. 15 ; Moses on Man. 58–88 ; *Bland* v. *Rodman*, 43 Mo. 256. "The only benefit relator would gain by the present proceedings would be a' certificate of election *prima facie* entitling him to the office ; in other words a shifting of the burden of proof. It is not admissible to resort to *mandamus* unless substantial if not final relief can be given." *Sherburne* v. *Horn*, 45 Mich. · 160. It is a maxim that a court will never do a useless thing. In this case, if the Secretary is made to recanvass the returns

and declare Chalmers elected, he cannot be compelled to recall his former certificate. If he could, there is no power in the court to coerce the Governor, who is not a party to the suit, to surrender the certificate, which is a part of the records of his office, or to compel him to recall the commission issued to Manning. Suppose, however, the writ is awarded and the Governor is gracious enough to do everything the relator wishes done, so that all the above difficulties are removed out of the way of the court, how can Manning be compelled to return the commission, or the clerk of the House made to take his name from the roll of members and substitute that of Chalmers? To sustain the judgment here, will be to reverse the official action of the Secretary of State, the Governor, and the clerk of the House, and to take from Manning, who is not before the court, his title to the office, of which the commission is *prima facie* evidence. On all questions arising collaterally, or between him and strangers, this commission is conclusive as to his right to the office. Of course, this proceeding is a col lateral one as to him. *Morgan* v. *Quackenbush*, 22 Barb. 789. See McCrary on Elect., sect. 221; 54 Ala. 320.

3. The plaintiff in this case has a full and complete remedy before the House of Representatives. He is not compelled to get a certificate of election or commission in order to establish his right to the office. The certificate is *prima facie* evidence, but it is not conclusive; nor is it the only evidence by which the title may be established. It is the fact of election which gives title to the office, and this may be established not only without, but against, the evidence of the certificate. *Magee* v. *Supervisors*, 10 Cal. 376. Having instituted a controversy on the *prima facie* aspect of the case before Congress, the relator has taken the case away from the courts of this State.

*E. M. Watson* and *L. Brame*, for the appellant, argued the case orally.

*J. R. Chalmers, pro se.*

1. State courts have jurisdiction to compel State authorities to properly discharge their duties with reference to congres-

sional elections. Authorities are uniform on this question. *Bisbee* v. *Board of Canvassers*, 17 Fla. 14; 36 Wis. 498; 53 N. H. 473; 65 Mo. 480; 72 Mo. 365; 7 Bush, 527; 29 Ill. 418. *Oglesby* v. *Sigman* is not in conflict with this decision, but only decides that commissioners of election cannot be re-assembled to revise their own judgment.

2. The action of the Secretary of State in counting the vote from Tate County, was plainly and flagrantly wrong. He should have followed the certificate and disregarded the tally sheet or tabular statement. This exact question was so decided in 4 Wis. 569; 36 Wis. 499, and 72 Mo. 365.

3. *Mandamus* is the proper remedy. High on Extr. Rem. 56; 7 Bush, 523; 3 Kan. 95; 20 Pick. 484; 2 Gray, 370.

4. It is immaterial that a false count and declaration of the result has been made. 7 Bush, 527; 29 Ill. 319.

5. The court will not only order a new count, but direct how that count shall be made. 17 Fla. 14; 65 Mo. 569; 8 S. C. 379.

6. It is wholly immaterial that the amended returns from Tate County were received after ten days from the election. It should be counted now. McCrary on Elect., sect. 145.

7. The jurisdiction by *mandamus* is never defeated until the party unlawfully claiming has been actually installed in office. 17 Ill. 167; 27 Ill. 246; 29 Ill. 414; 7 Bush, 527; 32 La. 20; Pick. 484; 2 Gray; 2 Minn. 180; 3 Hen. & M. 1; 13 Ala. 805; 7 Iowa, 187, 390.

8. The issuance of a commission to the wrong man does not defeat the jurisdiction. See cases last cited, and also *The State* v. *Hayes & Mackey*, 8 S. C. 379; *Bisbee* v. *State Canvassers*, 17 Fla. 61; *The State* v. *Johnson*, 17 Ark. 407; *Pacheco* v. *Beck*, 52 Cal. 3; *Governor* v. *Nelson*, 6 Port. 496; *Davidson* v. *Purmah*, Record, 45 Cong. (1st Sess.), vol. 6, p. 52.

9. Jurisdiction cannot be defeated by act of defendant after commencement of suit by *mandamus*, and after service of injunction not to act. *Farnsworth* v. *Fowler*, 1 Swan, 1; Hill on Inj. 146, sect. 215; 8 S. C. 379; 49 Ala. 53; 29

Ill. 420, 425 ; 23 Kan. 267 ; *The State* v. *Johnson*, 17 Ark. 407.

10. This is clearly true under our statute, which combines injunction with *mandamus*. By the provisions of various sections it clearly abolishes the old idea that the only object of the writ is to compel action and there stop. By sect. 2542, it compels the officer "to do or not to do the thing desired." "The judgment of the court shall be framed to meet the exigency." Sect. 2545. The writ shall "command what has been adjudged." Sect. 2546. The act "required to be done may be done by the plaintiff" (a thing unheard of at common law), "or some other person at the expense of the defendant." Sect. 2549. It carefully provides against the very result here attempted to be brought about, to wit, a change in the rights of the parties pending the proceedings, by arming the court with the power of issuing injunctions. Sect. 2550. Its judgments shall not be confined to the ancient form or to any form appropriate to a common-law court, but should rather conform to decrees in chancery, and may vary with the exigencies of the case, so as to insure perfect and complete justice. Sects. 2545–2549. It is indeed no longer a common-law action save in name, but is rather like our mechanic's lien law, the introduction of a chancery proceeding in a common-law court. No such statute is to be found elsewhere, and decisions on statutes of dissimilar character are not applicable. The courts of this State have no right to refer a petitioner for *mandamus* to any other remedy which is less plain, less adequate, or less speedy. They have no right to refuse to enter any order or judgment which the exigency of the case may require. The manifest intention is to rid the writ of the obstacles which at common law rendered it so inefficacious, and to make it so broad and comprehensive that by it full and complete relief may be afforded wherever any public officer who is amenable to the jurisdiction of the Circuit Court, in any action, has failed to perform his exact legal duty.

11. The court should act without considering what the executor might or might not do afterwards.   17 Fla. 64.

12. The action of the Secretary was fraudulent, and should be annulled.   Judge Coulter said, in *Mitchell* v. *Kintzen* : "In the eye of the law, fraud spoils everything it touches; the broad seal of the Commonwealth crumbles into dust as against the interest designed to be defrauded ; every transaction in life is corrupted by its contagion. Why, then, should it find shelter in the decrees of court, the last place on earth where it should find refuge." 5 Pa. St. 216. In the language of Judge Jere Black, in the Florida case before the electoral commission : " False is fraudulent in all cases of this kind. Where a man undertakes to say, I certify to this fact, and at the time he does it there glares upon him from the record that lies before him the evidence that the fact is the other way, is not that a fraudulent certificate? And if it be fraudulent, is it not as void in law and as corrupt in morals as if it were a simple counterfeit?" Judge Hoadly, in the same case, quoted as follows : "It would be too great a triumph for injustice if we should enable it to postpone forever the performance of a plain duty, only because it had done wrong at the right time." 2 Ad. & E. 25. Justice Field, in his opinion, said: " I asked  *  *  *  was there no remedy? Gentlemen answered as before, there was none ; that whatever fraud may have existed must be proceeded against, and its success defeated before the electors voted ; that whatever related to their action was then a closed book. If this be sound doctrine, it is the only instance in the world where fraud becomes enshrined and sanctified behind a certificate of its authors." Justice Clifford, in the same case, said : "Without a moment's delay the Tilden electors sued out a writ of *quo warranto* against the usurpers, and by extreme diligence caused it to be served on them one hour before they cast their votes.  *  *  *  Neither the public nor the citizens have any power to defeat the machinations of fraud, perjury, and forgery, if the measures adopted for that purpose in this case are to be

held ineffectual and insufficient.''   Without a moment's delay Chalmers sued out a writ of *mandamus* against Myers, and by extreme diligence caused it to be served about one hour before he counted the votes.   Neither the public nor the citizens have any power to defeat the machinations of fraud, perjury, and forgery in Mississippi, if the measures adopted for that purpose in this case are to be held ineffectual and insufficient, and no Mississippian should again denounce the decision of the electoral commission.

13. The Governors often issue two commissions to different persons for the same office.   The Governor of Indiana issued commissions in duplicate to Neff and Shanks in the Forty-third Congress, and the Governor of West Virginia did the same for Davis and Wilson in the same Congress.   And in the Forty-fifth Congress, commissions were issued to Davidson and Finley, after commissions or certificates had been issued to Purman and Bisbee for the same offices.   The Governor of Mississippi, and Governor Lowry himself, has issued a new commission to another man after a commission had by mistake been issued to the wrong man.   In the case of *Hoge* v. *Reed*, from the Third District of South Carolina, after the election in 1868, Mr. Cessna, chairman of Committee on Elections, reported among other things as follows : '' We think also that this decision can be sustained upon principle.   The question is entirely within the control of the State canvassers, or the Governor of the State (as the case may be under the law), until the roll of the House is made up by the clerk.   There is no vested right under a certificate that would prevent the canvassers from rectifying any error or mistake that may have occurred in their deliberations or actions until the holder of the same has been awarded his seat by the clerk of the House,'' etc.   See speech of Mr. Cox, Cong. Record, 45th Cong. 1st Sess., vol. 6, p. 62.   The power to issue a second commission after a judicial inquiry has shown that the first was erroneous, is unquestionable, and is declared in emphatic terms in *Ewing* v. *Filley*, 43 Pa. St. 384.   The same doctrine is thus clearly held in

Arkansas : "A commission is simply evidence of a right to hold an office, gives color to the acts of the incumbent, and constitutes him as officer *de facto*, but invests him with no right to the office, and it becomes destroyed, cancelled, and superseded upon the issuance of a commission to another who has been legally elected to fill the office." *The State* v. *Johnson*, 17 Ark. 407.

*Nugent & McWillie*, on the same side.

Our statute is but a re-enactment of the common law. It reads : "On the petition of the State by its attorney-general, or a district attorney, in any matter affecting the public interest; or on the petition of any private person who is interested, the writ of *mandamus* shall be issued by a Circuit Court commanding any inferior tribunal, corporation, board, officer, or person to do or not to do an act, the performance or omission of which the law especially enjoins as a duty resulting from an office, trust, or station ; and where there is not a plain, adequate, and complete remedy in the ordinary course of law." Code, sect. 2542. "During the pendency of the action the court, or judge in vacation, may make temporary orders for preventing damage or injury to the plaintiff, until the case is decided." Code, sect. 2550. The mere statement of this law would seem to answer the clamor as to the jurisdiction of the Circuit Court. But the question is distinctly answered by the best courts in the country. We quote the language of the court in *Strong's Case*, 20 Pick. 495 : "In every well constituted government, the highest judicial authority must necessarily have a supervisory power over all inferior or subordinate tribunals, magistrates, and all others exercising public authority. If they commit errors, it will correct them. If they refuse to perform their duty, it will compel them. In the former case by writ of error, in the latter by *mandamus*. And generally in all cases of omissions or mistakes, when there is no other adequate specific remedy, resort may be had to this high judicial writ. It not only lies to ministerial but to judicial officers. In the former

case it contains a mandate to do a specific act, but in the latter
only to adjudicate, to exercise a discretion, upon a particular
subject." *Springfield* v. *County Commissioners*, 10 Pick.
244 ; 5 Binn. 102 ; 4 Texas, 405 ; 14 Barb. 261 ; 1 Har. & McH.
429. *Mandamus* is the proper process for restoring a person
to an office from which he has been unjustly removed. *White's
Case*, 2 Ld. Raym. 959, 1004 ; *Rex* v. *Field*, 4 Term Rep.
124. So it lies also to admit any one to an office, a service, or
a franchise from which he is unlawfully excluded. 6 Dane's
Abr. 326 ; *Rex* v. *Surgeon's Company*, 2 Burr. 892 ; *Rex* v.
*Bedford Level Corp.*, 6 East, 356 ; *Rex* v. *York*, Term Rep.
699 and 5 Term Rep. 66 ; 3 Hen. & M. 23, 25. Under our
judicial system the Circuit Courts are courts of original com-
mon-law cognizance nearly analogous to the courts of West-
minster. The jurisdiction of the Court of King's Bench is
very high and transcendant. It keeps all inferior jurisdictions
within the bounds of their authority, and may either remove
their proceedings to be determined by it, or prohibit their
progress below. It superintends all civil corporations in the
kingdom. It commands magistrates and others to do what
their duty requires in every case where there is no other spe-
cific remedy, etc. 3 Bla. Com. 42, 110 ; *Planters' Ins. Co.*
v. *Cramer*, 50 Miss. 200. Where a ministerial act which
ought to be done is essential to maintain or satisfy the legal
rights of an individual, *mandamus* is an appropriate remedy
for coercing the act in case of a refusal to perform it. And
it is manifest that the tribunal which has power to refuse or
grant the writ, must have power to decide all questions on
which the propriety of granting or refusing it depends. *Page,
Second Auditor*, v. *Harden*, 8 B. Mon. 652 ; *The People* v. *Su-
pervisors*, 12 Johns. 414 ; *Hull* v. *Supervisors*, 19 Johns. 260 ;
*The People* v. *Dutchess and Columbia R. R. Co.*, 58 N. Y. 152 ;
*Smith* v. *Moore*, 38 Conn. 105 ; *Bell* v. *Pike*, 53 N. H. 473 ;
*The State* v. *Gibbs*, 13 Fla. 55 ; *Arberry* v. *Beavers*, 6 Texas,
464, 472. This rule is well illustrated by the case of *Ken-
dall* v. *United States*, 12 Pet. 629, in which the postmaster-

general refused to credit S. & S. with the amount awarded to them by the solicitor of the treasury — when no discretion in the matter was given to him, and the duty enjoined was purely ministerial. "The case was, therefore, a case for mandamus," say the court, " provided Congress has conferred on the Circuit Court of the District of Columbia the prerogative jurisdiction and powers of the Court of King's Bench of England. In such case the Court of King's Bench of England would undoubtedly issue the writ of mandamus to such an officer commanding him to enter the credit;" and the writ was awarded. Until ministerial officers have performed the exact duty enjoined upon them by law, they are in default, and may be proceeded against by mandamus. Clark v. Mc-Kenzie, 7 Bush, 523 ; Ellis v. County Commissioners, 2 Gray, 370 ; 13 Fla. 55, 73, 74. A party elected has the right to receive his certificate of election, and if it is refused him, and given to another, he may call upon the court for redress by mandamus. Its sole purpose is to procure the requisite evidence to present to the House of a prima facie right to a seat in it, independent wholly of the question of qualification, and the only means by which this can be obtained is by the compulsory writ of mandamus. It is not the case where one person desires to be placed in an office now filled by another, for in such case mandamus will not lie. The office of canvassers is merely ministerial, and is controllable under this process. If before the issuance of their certificate they have notice of the proceedings by mandamus on the part of another to have the certificate issued to him, their error in the issuance of the first certificate will be corrected. The People ex rel., etc., v. Fuller, 29 Ill. 413, 420, 425 ; Brown v. O'Brien, 2 Ind. 423 ; Kesler v. Cameron, 39 Ind. 488 ; Lee v. The State, 49 Ala. 43. The distinction is taken between cases where the commissioners have acted without notice of any mandamus proceeding against them and fairly declared the result and issued their certificate, and cases where they have notice of such proceedings, or are specially enjoined from acting ; and it is thus

stated in *O'Hara* v. *Powell*, 80 N. C. 103 : "When the Board of State Canvassers has acted upon the return transmitted to them and issued a commission to the person elected representative on the face of the return, the only remedy open to the contestant is by a contest before the House of Representatives. *Mandamus* is only available when there is opportunity to secure full and correct returns." 1 Swan, 1 ; 7 Iowa, 186 ; 1 Hill on Inj. 164. The State courts have jurisdiction to compel a canvass of returns of votes for a representative in Congress. *The State* v. *Alechuca County Commissioners*, 17 Fla. 9. Indeed it has been held that a peremptory writ of *mandamus* will be awarded to compel a canvassing board to canvass all the returns, where it has failed to do so, though the returns are regular and genuine, and it has declared elected the parties who had the fewest votes. *The State* v. *Hodgeman County Commissioners*, 23 Kan. 264. Where the return of votes is defective by reason of any informality, for instance, for want of the signature of the city clerk, and a duly attested copy of the record is offered as a substitute, the canvassing board are under a legal obligation to receive the substitute. *Rounds* v. *Smart*, 71 Me. 380. In a proceeding by *mandamus* to compel a Board of Canvassers to count a vote as returned by the officers of election (in case of a congressional election), when it appears that an alteration has been made in the return of the vote, but the canvassers do not know whether it was made before or after the return was delivered to them by the officers of election, the Circuit Court will inquire and determine what the return, as delivered, actually was, and will compel them to make the count accordingly. *The State*, ex rel. *Metcalfe*, v. *Garesché*, 65 Mo. 480. This results from the fact that the ministerial officer has no judicial eye ; he can institute no proposition involving any mental process beyond that of a simple count, but the court, through the medium of testimony taken for that purpose, can and will enable him to see and advise him what to do. *The State* v. *Wilson*, 49 Mo. 146.

· *W. L. Nugent*, of counsel for the appellee, argued the case orally.

CAMPBELL, C. J., delivered the opinion of the court.

This is a petition by the appellee for a *mandamus* to compel the appellant to count for him 1,472 votes cast for him in Tate County at the election held therein for a representative in the Congress of the United States, on the 7th of November, 1882, and to declare him elected. The first petition was filed before the count was made, and from the apprehension that the votes mentioned would not be counted for the petitioner. They were not so counted, but were counted for another, and the appellant declared Manning to have been elected, and, thereupon, the Governor commissioned him. An amended petition was filed, and presented these facts, and such proceedings were had as resulted in a judgment of the Circuit Court as prayed in the petition, from which an appeal was taken. That *mandamus* is the appropriate means to compel an officer charged with the duty to declare the result of an election is beyond dispute. That the office is such that the courts have nothing to do with a trial of the right to it, is not an objection to the exercise of their power to compel the performance of duty by an officer with respect to the election. The only difference in the cases is as to the circumstances under which the courts should interpose and the relief they will afford. McCrary on Elect., sect. 338, says : " We gather from all the authorities the following rules : —

" 1. If the officers of election refuse or fail to act, *mandamus* will lie to compel them to discharge their duties as required by statute ; but in such cases the writ will not, as a general rule, command such officers to certify that any particular person has been elected.

" 2. If there are two or more persons claiming the office, the writ will never issue to require such officers to declare either one elected, but only to command them to execute the duties and exercise the functions conferred upon them by law.

60 MISS. — 50

" 3. If it clearly appears that a particular person has received the majority of the votes cast, and that no question is made upon this point, perhaps *mandamus* may issue to compel such officers to certify the election of that person by name, although this is substantially the same thing as to order them to certify the result according to law, and, therefore, the latter form will always be found to be the best."

In sect. 337 this author says : "A few cases may be found in which the writ of *mandamus* has issued to the proper certifying or returning officer, commanding him to certify the election of a particular person by name ; but this is believed to be an improper, or at least an improvident, use of the writ. It should be issued, if at all, simply to compel a return or certification of the result, as shown by the proper returns ; but the court issuing the writ should not assume to determine, and in advance, who, by such returns, is entitled to the office. As we have heretofore observed, the proper use of the writ is to compel but not control action by the returning officers. If the person actually elected is not returned and certified to be elected, his remedy is plain, and it is desirable that all questions connected with counting the votes and declaring the result should in the first instance remain with the officers of election." It is clear that where a ministerial officer refuses or fails to act in the performance of his duty as to the result of an election, he may be compelled to do so, and a number of cases hold that where he has acted, but wrongly, he will be compelled to act over and rightly. Of these are *Florida, ex rel. Bisbee*, v. *State Canvassers*, 17 Fla. 29 ; *Fuller* v. *Hilliard*, 29 Ill. 413 ; *Clark* v. *McKenzie*, 7 Bush, 523 ; *O'Ferrall* v. *Colby*, 2 Minn. 180 ; *The State, ex rel. Price*, v. *Lawrence*, 3 Kan. 94.

The Secretary of State has no duty to perform as to elections except to " sum up the whole number of votes given for each candidate, and to ascertain the person or persons having the greatest number of votes for each office, and shall declare such person or persons to be duly elected, and thereupon all persons chosen to any office at such election shall be commissioned by

the Governor." Code 1880, sect. 141. The Secretary of State, as to this duty, is a merely ministerial officer, and is amenable to the courts as such, and may be proceeded against by *mandamus.*

It is a fundamental principle never to grant the writ of *mandamus* where, if issued, it would prove unavailing. High on Extr. Rem., sect. 14.

In this case the Secretary of State, having declared Manning to be duly elected, and the Governor having commissioned him upon such declaration, we adopt the language of the Supreme Court of Missouri in the similar case of *Bland* v. *Rodman*, 43 Mo. 256, and say : " The case has passed beyond any control of this court, and the only redress the relator has, if he considers himself aggrieved, is by a legal contest made in pursuance of law." In that case the writ was denied because the Secretary of State had certified to the Governor the result of the election, and the Governor, acting on that, had commissioned another than the relator.

In *The People, ex rel. Thompson,* v. *Morer,* 50 Ill. 100, *mandamus* was denied because another than the relator had been declared elected, and had been commissioned ; and so in *Sherburne* v. *Horn,* 45 Mich. 160.

The distinction between cases in which the final act of investing the person declared elected with the evidence of his election, has been done, and those in which it has not, is fully illustrated in the cases of *Florida, ex rel. Bisbee,* v. *Board of County Canvassers,* 17 Fla. 9, and the *Same* v. *Inspectors of Election, Id.* 21, and *Same* v. *Board of State Canvassers, Id.* 29, and *Same* v. *Drew, Governor, Id.* 67.

In the first of these cases, the Board of Canvassers of Alachua County was compelled to return the votes cast. In the second the inspectors of a precinct were commanded to make certain returns. In the third the Board of State Canvassers was required to reassemble, and recount the votes, and give a certificate of election to Bisbee, who then demanded of the Governor a commission, in accordance with this certificate.

The Governor refused his demand on the ground that he had on the former declaration of the result of the election issued a commission to another in accordance with it. Bisbee applied for *mandamus* to compel the Governor to give him a commission, but the court refused it.

In *The State v. Governor*, 1 Dutch. (25 N. J.) 331, the writ was refused when asked to require the Governor to issue a commission in opposition to the declaration of the result of the election as made to him by the officers charged with the duty of declaring the result, although it appeared that the decision of the board declaring the result was contrary to the truth of the case.

In *The State v. Fletcher, Governor*, 39 Mo. 388, the court refused to issue *mandamus* to require the Governor to issue a commission, and to this effect are many other cases.

In *O'Hara v. Powell*, 80 N. C. 103, in which one who had been a candidate for representative in Congress, sought *mandamus* to compel the persons composing the Board of County Canvassers of Edgecombe County to reassemble and make a new and full recount, so as to include certain votes omitted in their former count, the court, having assumed, from the time elapsed, that the State canvassers had acted on the returns made to them, and declared the result, and that the commissions had issued to those declared to have been elected, said: "The case has therefore proceeded so far that no judicial order in this action can change or affect the result." It could only result, the court further said, "in making two inconsistent determinations, and perhaps, a third *mandamus* become necessary to compel the issuing of a second commission for the same office. In the election of a member of the General Assembly or a representative in Congress, contesting claims to a seat must be tried before the body to which the certificate of election or commission accredits the person holding it, and the decision there made is final and irreversible." That court, after showing that no action it could take could disturb the person who had been commissioned as a representative in

Congress, or assist the petitioner in his contest before the House, refused to do the useless act of issuing the writ of *mandamus*, and dismissed the petition for it.   The court conceded the propriety and utility of the writ "while the political machinery is in motion and the result undetermined," but as the matter was ended by the final act of the State officials in accrediting one as a representative in the House of Representatives, it was remitted to that House to deal with, and dispose of, all questions involved in the controversy.   These cases rest upon sound principles, as we believe, and command our approval.   A commission issued by the Governor is irrevocable.   He cannot revoke it, except in case of his appointee removable at his pleasure.  *Marbury* v. *Madison*, 1 Cranch, 137.  *Ewing* v. *Thompson*, 43 Pa. St. 372.

It must stand until vacated and annulled by a body which has the right to investigate the facts of the election, and decide who is entitled to the office.   The statute requires the Secretary to sum up the votes cast, as shown by the returns made to him, and to declare the result to the Governor, who commissions.   The Secretary of State is not required to issue any certificate or paper to the person elected.   He simply declares the result, and the Governor furnishes the credentials which accredit the person declared by the Secretary to have been elected.   This constitutes the credentials spoken of by the act of Congress, which directs the making up of a roll of the members of the House.   U. S. Rev. Stats., sect. 31.

If we were to require the Secretary of State to make another declaration of the result of the election, it would be nugatory.   It would not constitute the required credentials.   If we were to command the Secretary to issue a certificate of any sort to the petitioner, we would require what no law requires of him in reference to the election.   If we assume that the Governor would deem it his duty to regard a new declaration of the result of the election, enforced from the Secretary of State by the court, nothing still would be effected, because the Governor has no

power to recall or vacate the commission heretofore issued. If we should declare that commission illegal and void, we would transcend our legitimate functions, and present the unseemly spectacle of a condemnation of the official act of the chief executive of the State in the performance of the duty imposed on him by the Constitution and law of the State, with the clerk of the House of Representatives of Congress primarily, and the House ultimately to sit in judgment on the act of this court in pronouncing the commission void. If the Governor should issue another commission there would be two persons armed with credentials, under the great seal of Mississippi, suitors for recognition as the rightful claimants of an office which only one can hold.

The court will not do a vain thing. It will not act where it cannot adjudicate. It will not pronounce judgment to be disregarded. It may deal with subordinate ministerial officers, and compel them to perform duty, where its power is invoked under circumstances that enable it to render effective relief, but it has nothing to do with the contest between the petitioner and Manning in the present attitude of their controversy.

Judgment reversed, and petition dismissed.

CHALMERS, J., took no part in this decision.