Davis, J.
It is to be regretted that the defendant did not see fit to answer, as has been sometimes done in like cases before, submitting the question of law to the court and expressing a willingness to abide by its decision. Such a course would have relieved us from some embarrassing considerations; but the case is before us on demurrer to the petition, and, in addition to the main question, it is urged by the attorney general, who appears as counsel for the defendant, first, that the relator has no such beneficial interest in the act which he seeks to have performed as entitled him to apply for a writ of mandamus, and second, that the court has no “power” to require the performance of an official act by the governor of the state.
Concerning the first proposition of the attorney general, it may be conceded that a majority of the courts which have pronounced opinions on the subject, have held that a private relator applying for a mandamus must show a special interest in himself*; but even in some of those jurisdictions it has been said that “the rule which rejects the intervention of private complainants against public grievances is one of discretion and not of law.” Ayres v. Board of State Auditors, 42 Mich., 422, 429. And in the same case, pages 429-430, the court made the following observations which are very pertinent here: “In the present case the officer whose duty it usually is to enforce the rights of the state, in this court, has, in the perform *616 anee of his official functions as adviser of the state officers, placed himself in an adverse position, and appears for the respondents on this application. Inasmuch, then, as the attorney general refuses to appear and seek the enforcement of the statutory provisions, does his refusal preclude its enforcement? And if not, is the relator authorized to bring the matter before this court? There may perhaps be others who have interests that would justify their appearance, but there is no one else whose duty it is to appear when the attorney general declines to do so. * * * There are serious objections against allowing mere interlopers to meddle with the affairs of the state, and it is not usually allowed unless under circumstances when the public injury by its refusal will be serious. * * * But we find no reason to consider the matter as one lying outside of judicial discretion, which is always involved in mandamus, cases concerning the relief as well as other questions.” In Railroad Co. v. Hall et al., 91 U. S., 343, the court say: “There is, we think, a decided preponderance of American authority in favor of the doctrine, that private persons may move for a mandamus to enforce a public duty, not due to the government as such, without the intervention of the government law officer.” The same ruling was made in Railroad Co. v. Suffern et al., 129 Ill., 274; and in State ex rel. Currie et al. v. Weld, Oounty Auditor, 39 Minn., 426; see High on Extraordinary Remedies, (3 ed.) Sec. 431. The right of a citizen to enforce a public right, without the intervention of the attorney general, has been established in this state in two cases, viz.: State v. Brown, 38 Ohio St., 344; State ex rel. v. Tanzey et al., 49 Ohio St., 656.
*617 We now come to the attorney general’s second, contention, that is, thát “this court has no power to require the performance of an official act by the governor of the state.” If reference is here made to the physical power to enforce obedience to the writ, we will say that we are not concerned with that suggestion. 'We will assume that the governor is just as. ready to respect the law, and the mandates of the courts, as any other officer who has taken an oath to support the constitution and to faithfully perform the duties of his office. If this expression is intended as a denial of our jurisdiction or of our duty to issue a writ of mandamus against the governor in a proper case, we pause long enough to state our reasons for holding to the contrary view. First, the judges of this court, after argument by eminent coun-. sel on both sides, were unanimous in the conclusion that in regard to a ministerial act, which might have been devolved on any other officer of the state, the governor might be made amenable to the compulsory process of this court by mandamus, State ex rel. Whiteman et al. v. Chase, Governor, 5 Ohio St., 528; and on consideration now we see no sufficient reason for overruling that decision. While there is irreconcilable conflict in the opinions on this subject, we think that the better reasoning is found in those cases, which reach the conclusion that a writ of mandamus, may be directed to the governor, or any other officer,, to compel the performance of clear legal and mandatory duties. See cases collected in 6 Am. & Eng. Enc. Law, (2 ed.) 1013. See also, dissenting opinions in State ex rel. v. Board of Canvassers, 17 Fla., 9; People v. Morton et al., 156 N. Y., 136.
The legislative, executive and judicial departments; of the state government are not so absolutely dis *618 tinct that an arbitrary exercise of power, or what is the same thing, an arbitrary refusal to exercise power, could not be checked or opposed by either of the other departments. Such a theory is opposed to the principle of checks and balances upon which the federal and state constitutions have been framed. Indeed, it does not seem clear to us, if the judicial department may annul an act of the legislature by declaring it unconstitutional, why it may not constitutionally exercise its functions in requiring the executive department to p'erform a clear legal duty which it neglects or refuses to perform. Neither are we ready to acknowledge that any office or officer is so high that the law cannot reach him.
And now it is necessary to define more distinctly what are ministerial duties and ministerial acts. Perhaps no better definition can be found than that given by the Supreme Court of Indiana in Flournoy v. Jeffersonville, 17 Ind., 169, which is as follows: “A ministerial act. may, perhaps, be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.” Assuming for the present purpose that the duty of the governor to act when a vacancy occurs in the office of lieutenant governor, is found in Revised Statutes, Sec. 81, it is clear that the duty thus imposed is mandatory. The governor is allowed no discretion as to acting, however much discretion he must necessarily exercise in selecting the person whom he shall appoint. It is equally clear, we think, that this power is not essentially an executive function, but is derived wholly from the com *619 mand of the statute, and that under the constitution, Art. 2, Sec. 27, the legislature might, just as lawfully, have imposed the duty on some other officer; for the appointment of all officers and the filling of all vacancies, not otherwise provided for in the constitution, shall be made in such manner as may be directed by law. The power to appoint officers does not inhere in the office of governor. When no such power is conferred on the governor by the constitution or by a valid enactment by the legislature, he cannot exercise such power. The power to appoint to fill a vacancy has been delegated by the people to the legislative branch of the government, and that branch has by law “directed” the governor to perform it. It becomes, therefore, a purely ministerial duty to appoint. Fox v. McDonald, 101 Ala., 51; Mayor, etc., v. State, 15 Md., 376; Hovey, Governor, v. State ex rel., 119 Ind., 395; People v. Freeman, 80 Cal., 233; State v. George, 22 Ore., 142.
The substance of this proceeding appears to us to be confined within a very limited compass. We are not disposed to speculate upon imaginary cases, nor to indulge in discussion concerning contingencies for which, possibly, sufficient provision may not have been made. We are content to dispose of the case presented to us, and to dispose of it according to the parts of the constitution, and of the statutes which are pertinent to it, without resolving ourselves into a legislature or a constitutional convention. We find no provision in the constitution specifically providing for filling a vacancy in the office of lieutenant governor. It is argued that the words “until the vacancy is filled” refer to a vacancy in the office of lieutenant governor. If that construction .is correct, and we *620 are inclined to think that it is not, still it is not provided how or by whom the vacancy shall be filled. The only provision in the constitution controlling the case in hand is the one already adverted to, Art. 2, Sec. 27; and the legislature having, by a plain, unambiguous and mandatory enactment, directed the governor to fill the vacancy by appointment it is in our judgment his clear duty to do so.
Another point which appears to be involved is the term of office of the appointee. Revised Statutes, Sec. 11, reads as follows: “When an elective office-becomes vacant, and is filled by appointment, such appointee shall hold the office till his successor is. elected and qualified, and such successor shall be elected at the first proper election that is held more than thirty days after the occurrence of the vacancy. * * The phrase “the first proper election” was. construed in State v. Barbee, 45 Ohio St., 347, to mean the first election appropriate to the office, that is, the-election at which such officers are regularly and properly elected. It seems, from a study of the constitution, Art. 3, Sec. 18, that the office of lieutenant, governor was omitted therefrom because, for obvious, reasons, it was desired to have the term of office of' the lieutenant governor begin and end at the same-time with the term of office of the governor, and that the last clause of that section of the constitution would defeat that purpose, if the office of lieutenant governor was named therein. From these considerations we are of the opinion that the appointee should be appointed for the unexpired portion of the term of Lieutenant Governor Nippert, and that he should, hold until his successor is elected and qualified as provided in Revised Statutes, Sec. 11; and that the first *621 proper election for his successor is the first election at which a lieutenant governor would have been chosen had no such vacancy occurred. The dejnurrer to the petition is overruled and

Peremptory writ awarded.

Burket, Spear and Price, JJ., concur.